IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:24-CR-113-TAV-JEM ) |
| TIFFANY HANEY, ANNE WARREN, and TINA ROPER, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

All pretrial motions have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or recommendation as appropriate. Now before the Court is Defendant Tiffany Haney's Motion for a Bill of Particulars [Doc. 89[1] pp. 4, 6, 27–28] in which Defendants Anne Warren [Doc. 96] and Tina Roper [Doc. 138] seek to join, and on Defendant Tina Roper's Motion for a Bill of Particulars [Doc. 159].

For the reasons set forth below, the Court permits Defendants Warren and Roper to join in Defendant Haney's motion and **DENIES** both motions for a bill of particulars. While a bill of particulars is not required, the Court **ORDERS** the Government to provide Defendants with copies of all prescriptions upon which it will rely in its case-in-chief on or before **November 17, 2025**.

**I.     BACKGROUND**

---

[1] Defendant Haney's motion also includes a Motion and Memorandum to Suppress, which the undersigned addresses in a separate Report and Recommendation.

The Second Superseding Indictment charges Defendants Haney, Warren, and Roper with conspiring to commit health care fraud from August 2018 to October 2024, by submitting claims for "medicines not dispensed pursuant to a valid prescription, as well as altered and forged prescriptions . . . for the purpose of executing a scheme and artifice to defraud health care benefit programs" to obtain "millions of dollars" in payments by false and fraudulent representations (Count One) [Doc. 127 pp. 1, 4–5]. Defendant Haney also faces charges for one count of making false statements relating to health care matters (Count Three) [*id*. at 10] and two counts of aggravated identity theft (Counts Five and Seven) [*id*. at 11]. Defendant Warren was likewise charged with two counts of making false statements relating to health care matters (Counts Two and Four) [*id*. at 10] and two counts of aggravated identity theft (Counts Six and Eight) [*id*. at 11]. Defendants Haney and Warren are charged with conspiring to commit money laundering from August 2018 through October 2024 (Count Nine) [*id*. at 12] and each are charged with two counts of money laundering (Counts Ten through Thirteen) [*id*. at 12–13].

These charges arise in part from the search of Rocky Hill Pharmacy ("RHP") on April 16, 2024, pursuant to a search warrant. Defendants allege that the executing agents seized approximately 70,000 prescriptions from RHP [Doc. 89 p. 6]. Defendant Haney, joined by Defendants Warren and Roper, request a bill of particulars stating which of the prescriptions seized from RHP the Government alleges were altered or forged [Doc. 89 p. 27]. Defendant Roper also asks for a bill of particulars specifying the following as to Count One: (1) all overt acts that she and the other Defendants allegedly undertook in furtherance of the conspiracy to include the dates, times, and locations of these acts; (2) the identities of all witnesses and unindicted coconspirators; and (3) the nature of the conduct constituting the crime [Doc. 159 p. 1]. The Government responded in opposition to both motions, alleging that the detailed Second Superseding Indictment

provides notice of the charges sufficient to allow Defendants to craft a defense, avoid surprise at trial, and plead a bar to double jeopardy [Doc. 111 p. 16; Doc. 169 pp. 1–3]. The undersigned heard oral argument on the motions on May 29, 2025, and August 12, 2025, and the matter is now ripe for adjudication.

II. ANALYSIS

Defendants jointly ask the Court to order the Government to provide a bill of particulars specifying which of the 70,000[2] prescriptions seized from the pharmacy were allegedly altered or forged in connection with the charges [Doc. 89 pp. 6, 27; Doc. 147 pp. 87–97]. Defendants argue that this information is essential for them to understand the charges and to prepare for trial [Doc. 89 p. 6; *see also* Doc. 159 p. 1; Doc. 165 p. 15 (Defendant Roper's Motion to Suppress)].

In addition to identifying prescriptions, Defendant Roper asks for specification of all overt acts that she (and the other Defendants) allegedly undertook in relation to Count One, the identities of unindicted coconspirators, the monetary total of claims allegedly associated with her in relation to Count One, and her property that is allegedly involved in or traceable to the charged offense [Doc. 159 p. 1]. Specifically, she seeks particularization of the following parts of the Second Superseding Indictment:

> (1) for paragraph one, identify the prescriptions that were "altered" and the prescriptions that were "forged" to obtain "millions of dollars owned by or under the control of health care benefit programs";
>
> (2) for paragraph 5, state the basis for the assertion that Defendant Roper "was a pharmacy technician licensed to practice in Tennessee";

---

[2] Defendants state the number of prescriptions seized as 75,000 [Doc. 89 p. 6; Doc. 147 p. 96 (argument of Haney's counsel)] and 70,000 [Doc. 195 p. 54 (testimony of Tiffany Haney at Aug. 12, 2025 hearing); *id*. at 61–62 (Haney's counsel at Aug. 12, 2025 hearing)]. The undersigned uses the estimate of 70,000 prescriptions for purposes of this Memorandum and Order.

3

(3) for paragraph 19, identify all unindicted coconspirators, the amount of money unlawfully obtained from a health care benefit program, and the "false and fraudulent pretenses, representations, and promises" made by Defendant Roper;

(4) for paragraph 26, identify all "formularies" Defendant Roper allegedly altered "by checking boxes next to unprescribed medications and writing additional refills not prescribed";

(5) for paragraph 27, identify "all formularies and other documents" that Defendant Roper allegedly "forged";

(6) for paragraph 28, identify all "formularies and other prescription documents" that Defendant Roper "forged [by] handwriting a patient name at the top of the document, marking boxes next to medications, writing in refills, and falsely signing the provider's name";

(7) for paragraph 29, identify all "notations" made by Ms. Roper "implying that a forged prescription was phoned in to the pharmacy and/or verbally authorized by a provider's representative";

(8) for paragraph 30, identify all alleged altered and forged formularies "submitted, or caused to be submitted to drug plans, PBM's, and other health care benefit programs for reimbursement, knowing that the formularies and other documents had been altered and forged" and identify all drug plans, PBM's and other health care benefit programs to which Defendant Roper submitted the altered or forged formularies;

(9) for paragraph 31, identify all additional reimbursement claims that Defendant Roper submitted through RHP's electronic prescription management platform for medications that were not selected on formularies and had not been prescribed by medical providers;

(10) for paragraph 32, identify all claims Defendant Roper submitted for medications that were "not medically necessary and/or were not dispensed pursuant to a valid prescription, and therefore not eligible for reimbursement";

(11) for paragraph 33, identify all altered or forged prescriptions or formularies and other documents and/or medications not prescribed by the providers that Defendant Roper caused to

4

    be filled, including refills, from August 2018 to October 2024, identify the associated "patients," identify the "patients' drug plans," and identify the millions of dollars in reimbursements;

(12) for paragraph 71, identify Defendant Roper's real or personal property that is derived, directly or indirectly, from gross proceeds traceable to the offense; and

(13) for paragraph 72, identify Defendant Roper's property, real or personal property that "was involved in any alleged offense" or "traceable."

[Doc. 159 pp. 2–5 (quoting the Second Superseding Indictment [Doc. 127])]. Defendant Roper maintains that identification of these details is necessary to clarify the charges, for preparation of a full defense, and to prevent surprise at trial [Doc. 159 p. 1].

  The Government responds that the detailed indictment in combination with discovery amply puts Defendants on notice of the charges, informs them of their roles in the offenses, and permits them to prepare for trial [Doc. 111 p. 16; Doc. 169 pp. 1–2]. It argues that Defendants' requests amount to a quest for its theories of the case and for "general discovery," neither of which the case law allows [Doc. 111 p. 16; Doc. 169 pp. 2–3].

  At the May 29, 2025 motion hearing, counsel for Defendant Haney argued that requiring Defendants to proceed to trial without knowing which documents are false or forged would be "fundamentally unfair" [Doc. 147 p. 87]. Counsel asserted that this is "an extremely broad case" involving 70,000 prescriptions and that the Government has added new theories of liability with each new indictment [*Id*. at 89–95]. Thus, defense counsel stated whether by a bill of particulars "or telling the[] [D]efendants [the nature of] the charges against them, [Defendants] need further detail" [*Id*. at 89].

  At the August 12, 2025 motion hearing, counsel for Defendant Roper requested additional specification on Defendant Roper's alleged role in the conspiracy because she is mentioned in only

5

two paragraphs of the Second Superseding Indictment [Doc. 195 pp. 8–9]. Defense counsel acknowledged receipt of "voluminous discovery" and that it is "searchable" [*Id*. at 8]. He also maintained that Defendant Roper, who is a pharmacy technician, is charged alongside the two owners who are both pharmacists, and the paragraphs referencing Defendant Roper state "that she caused certain things to be done that aren't part of her job" [*Id*.].

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) (discussing the *Hamling* standard). An indictment may allege the charges using the words of the statute itself if it gives all the elements of the offense "fully, directly, and expressly." *Hamling*, 418 U.S. at 117 (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). The statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117–18 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)).

Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the government to file a bill of particulars" and that "[t]he government may amend a bill of particulars subject to such conditions as justice requires." "The function of a bill of particulars is to 'to minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes.'" *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (quoting *United States v. Salisbury*, 983 F.2d 1369, 1375

6

(6th Cir. 1993)). It is not intended to be "'a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial.'" *Id*. (quoting *Salisbury*, 983 F.2d at 1375). Nor to discover the Government's theories of the case. *United States v. Musick*, 291 F. App'x 706, 724 (6th Cir. 2008) ("The bill of particulars is not intended as 'a means of learning the government's evidence and theories.'" (citation omitted)).

The granting of a bill of particulars is within the Court's discretion. *United States v. Salisbury*, 983 F.2d at 1375 (citation omitted). The level of detail in the indictment can be a basis for denying the motion for a bill of particulars. *Id*. (citation omitted). In addition, "'a defendant is not entitled to a bill of particulars with respect to information which is available through other sources.'" *United States v. Higdon*, 68 F. Supp. 3d 807, 811 (E.D. Tenn. 2014) (quoting *United States v. Paulino*, 935 F.2d 739, 750 (6th Cir. 1991), *superseded on other gnds by stat*., *United States v. Caseslorente*, 220 F.3d 727 (6th Cir. 2000)).

Here, the Court finds the Second Superseding Indictment is sufficiently specific to inform Defendants of the nature of the charges, to illuminate their alleged roles in the offenses, and to permit them to prepare for trial. The nineteen-page indictment states the dates of the alleged offenses and provides the object and "manner and means" of accomplishing that object for the health care fraud conspiracy alleged in Count One [Doc. 127 pp. 5–6]. The indictment states the object was for Defendants to enrich coconspirators "by fraudulently obtaining money from drug plans, PBMs, and health care benefit programs, by submitting for reimbursement altered and forged prescriptions for medications that were not prescribed by a licensed health care provider" [*Id*. ¶ 20]. Seven of the twelve paragraphs on the manner and means of the conspiracy reference all three Defendants [*id*. ¶¶ 26–32] and state that they altered formularies to include unprescribed medications and refills [*id*. ¶ 26], created forged formularies [*id*. ¶¶ 27–28], and noted false

7

authorizations on forged prescriptions [*id*. ¶ 29]. All three Defendants allegedly submitted claims for altered and forged formularies, unprescribed medications, and medications not medically necessary through the pharmacy's electronic prescription-management platform [*Id*. ¶¶ 30–32]. The Indictment also includes thirty-two paragraphs detailing overt acts by Defendants and the pharmacy in furtherance of the conspiracy [*Id*. ¶¶ 33–61].

"A bill of particulars is generally unnecessary where 'indictment provides the general dates of the falsifications, and the defendants have sufficient notice of their suspected roles in the fraud.'" *United States v. Glynn*, No. 3:13–00059, 2015 WL 2125082, at *9 (M.D. Tenn. May 6, 2015) (quoting *United States v. Younes*, 194 F. App'x 302, 310 (6th Cir. 2006)) (citation modified). Here, Defendants rely on *United States v. Glynn* and characterize it as "granting a bill of particulars detailing specific instances of forgery where [the] government alleged [the] defendant forged signatures on documents" [Doc. 89 p. 27]. But the holding in *Glynn* is more nuanced than Defendants suggest.

In *Glynn*, as part of an interrogatory-style list of requested particulars, a defendant facing charges of bank fraud sought, among other things, identification of "each signature or writing that [the defendant] is alleged to have forged himself, in any claim, check, or in any document" or that the government alleges that any coconspirator forged. *Id*. The court held the defendant's requests went "far beyond the scope of that which is properly the subject of a bill of particulars." *Id*. at *10. It said the indictment's allegation that the defendant used another's identification without lawful authority was sufficient to explain the nature of the charge and to prevent surprise. *Id*. The court opined that identification of who forged the signatures was both speculative, when the government admitted it did not know, and unnecessary given the government's theory that the defendant unlawfully used another's identification. *Id*. at *11. Nevertheless, the court ruled that "to the extent

8

the [g]overnment is claiming, and intends to argue and prove at trial, that [the d]efendant forged signatures on any specific documents . . . , it will be required to so notify [the d]efendant so that he can marshal evidence to rebut any such contention." *Id*.

Likewise, here, the Second Superseding Indictment sufficiently states nature of the charges and describes Defendants' alleged roles in the conspiracy. It gives the dates of the conspiracy, alleges numerous specific acts in furtherance of the conspiracy, and lists several specific medications and the initials of several providers. This is sufficient to permit Defendants to understand the charged conspiracy. Moreover, some of the allegedly forged and altered prescriptions are identified in the affidavits submitted in support of a search warrant and seizure warrants. Accordingly, the Court declines to exercise discretion to order a bill of particulars designating all altered, forged, or otherwise fraudulent prescriptions. Nevertheless, like in *Glynn*, the Court finds knowing which of the thousands of prescriptions seized the Government seeks to prove as forged, altered, or otherwise fraudulent at trial will allow Defendants to prepare a specific defense. The parties have also generally agreed to early disclosure of trial exhibits [*See* Doc. 199 pp. 13–14 ("The parties also want to exchange trial exhibits after rulings on pending pretrial motions and well in advance of trial.")]. Thus, the Court will order that the Government provide all prescriptions upon which it will rely at trial to Defendants on or before the deadline for presenting its case-in-chief trial exhibits.

Defendant Roper's remaining requested particulars for all overt acts, unidentified coconspirators, and property subject to forfeiture are also denied. "A defendant is not entitled to a bill of particulars if the purpose of the bill is to obtain a list of the Government's witnesses or to discover all of the overt acts that might be proven at trial." *Musick*, 291 F. App'x at 724 (citations omitted); *see also Glynn*, 2015 WL 2125082, at *10 (holding a defendant is not entitled to know

9

all overt acts for bank fraud). "Nor is the Government required to furnish the names of all other co-conspirators." *Musick*, 291 F. App'x at 724 (citation omitted). The Second Superseding Indictment lists the Defendants' forfeitable property, including Defendant Roper's Knoxville, Tennessee residence [Doc. 127 ¶ 71]. Finally, as revealed by the numerous exhibits filed in support of Defendants' suppression motions, including summaries of interviews of health care providers and two lengthy affidavits supporting a search warrant and seizure warrants, Defendants have a wealth of evidence in discovery illuminating the allegations of health care fraud and money laundering in this case.[3] *Higdon*, 68 F. Supp. 3d at 811 (observing that a bill of particulars is not necessary for information available from other sources (citation omitted)).

### III. CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

1. Defendants Warren and Roper are permitted to join in Defendant Haney's request for a bill of particulars;

2. Defendants' joint motion for a bill of particulars designating all altered, forged, and medically unnecessary prescriptions is **DENIED**;[4]

3. Defendant Roper's Motion for a Bill of Particulars [Doc. 159] is also **DENIED**; and

---

[3] The Government also states that it "has discussed the allegations and facts in this case at length with both counsel for Defendant Haney and Warren" [Doc. 111 p. 16]. Defendant Roper entered the case after these discussions. The Court observes that counsel for the Government has been willing to work with counsel for Defendant Roper as evidenced by discussions on discovery in the hearings on May 29 and August 12.

[4] The remaining parts of Defendant Haney's tri-part motion [Doc. 89] remain pending.

4. the Government is **ORDERED** to provide all prescriptions upon which it will rely at trial to Defendants on or before the deadline for presenting its case-in-chief trial exhibits, which is currently set for **November 17, 2025**.

**IT IS SO ORDERED**.

ENTER:

_____
Jill E. McCook
United States Magistrate Judge