IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:24-CR-113-TAV-JEM |
| | ) |
| TIFFANY HANEY, | ) |
| ANNE WARREN, and | ) |
| TINA ROPER, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This case is before the undersigned on the United States' Motion to Exclude Expert Testimony, seeking to exclude the testimony of Defendant Tiffany Haney's expert Dr. Alan Kaye [Doc. 203]. *See* 28 U.S.C. § 636(b). Defendant Haney is charged along with Codefendants Anne Warren[1] and Tina Roper[2] in a Third Superseding Indictment with conspiracy to commit wire fraud (Count One) [Doc. 217 ¶¶ 13–50]. The Third Superseding Indictment also charges Defendant Haney with three counts of wire fraud (Counts Two–Four) [*id.* ¶¶ 51–52], one count of making false statements relating to health care matters (Count Twelve) [*id.* ¶¶ 53–62], one count of aggravated identity theft (Count Fifteen) [*id.* ¶¶ 63–64], one count of conspiracy to commit money

---

[1] In addition to the conspiracy to commit wire fraud alleged in Count One [Doc. 217 ¶¶ 13–50], the Third Superseding Indictment charges Defendant Warren with three counts of wire fraud (Counts Five–Seven) [*id.* ¶¶ 51–52], two counts of making false statements relating to health care matters (Counts Eleven & Thirteen) [*id.* ¶¶ 53–62], two counts of aggravated identity theft (Counts Fourteen & Sixteen) [*id.* ¶¶ 63–64], one count of conspiracy to commit money laundering (Count Seventeen) [*id.* ¶¶ 65–66], and two counts of money laundering (Counts Nineteen & Twenty-one) [*id.* ¶¶ 67–68].

[2] The Third Superseding Indictment charges Defendant Roper with one count of conspiracy to commit wire fraud (Count One) [Doc. 217 ¶¶ 13–50] and three counts of wire fraud (Counts Eight–Ten) [*id.* ¶¶ 51–52].

laundering (Count Seventeen) [*id*. ¶¶ 65–66], and two counts of money laundering (Counts Eighteen and Twenty) [*id*. ¶¶ 67–68].

Defendant Haney notified the Government that she intends to call Dr. Alan Kaye, an anesthesiologist, pharmacologist, and director of pain medicine, "to explain the practice of pain management, how topical analgesics and compounded pain creams work to treat certain pain conditions, and their viability as safe and effective treatment alternatives to opioids and narcotic controlled substances" [Doc. 203-2 p. 2]. Pursuant to Rules 702 and 403 of the Federal Rules of Evidence, the Government moves to exclude his testimony [Doc. 203 p. 1]. The Government argues Dr. Kaye's testimony on the effectiveness and benefits of compound pain creams is irrelevant to the issues before the jury, which turn on whether the Defendants were fraudulently billing insurance plans for medications not authorized by prescribers [Doc. 203 pp. 1, 6]. It also contends that even if relevant, the danger of confusing or misleading the jury substantially outweighs the probative value of Dr. Kaye's testimony [*Id*. at 6].

Defendant Haney responds in opposition, maintaining that Dr. Kaye's opinions are directly relevant to the core issues in the Government's case and are needed to rebut the Government's experts [Doc. 210 pp. 1–2, 5–9]. She also contends that any risk of juror confusion can be alleviated by appropriate jury instructions and placing "targeted boundaries" on Dr. Kaye's testimony [*Id*. at 2, 11–12]. Defendants Warren [Doc. 223] and Roper [Doc. 224] seek to adopt Defendant Haney's arguments.

After careful review of the parties' filings and arguments and the relevant law, the undersigned concludes by a preponderance of the proffered evidence that Dr. Kaye's proposed testimony is relevant and that any prejudicial or confusing effect of his testimony is best weighed by the District Judge within the context of the trial.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

The Government notified Defendants of its intent to use the expert[3] testimony of Dr. Jodi Sullivan and Dr. Elliot Cook [Doc. 203-1 p. 1].

Dr. Sullivan, a licensed pharmacist and director of Medicare investigations, will "explain pharmacy standards of practice, how drug plans operate, how Medicare Part D works, its coverage for and coverage requirements for prescription drugs, and rules and regulations for provider enrollment and billing [under] Medicare Part D" [*Id*. at 3]. She will present testimony on how pharmacies ordinarily operate and on compounded medications [*Id*.]. Dr. Sullivan will testify about the "practitioner/patient/pharmacist relationship," also known as "the 'triad'" and that a valid prescription is one "for a medically accepted indication that facilitates the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member" [*Id*. at 4]. She will delineate the "[i]ndicators that a prescription is not valid" [*Id*. at 4–5]. Dr. Sullivan will also present testimony on the "[m]edically indicated uses of particular drugs and [their] potential adverse side effects" [*Id*. at 5].

Dr. Cook, a licensed pharmacist and the Chief Pharmacist at the Department of Labor Office of Worker's Compensation Programs, will "explain pharmacy standards of practice, how the U.S. Department of Labor (DOL) Energy Workers Program under the Energy Employees Occupational Compensation Program Act (EEOICPA) functions, its coverage and coverage requirements for prescription drugs, and rules and regulations for provider enrollment and billing" [*Id*. at 9]. Like Dr. Sullivan, Dr. Cook will testify about the way in which pharmacies typically operate and about compound medications [*Id*.]. He will also speak to the relationship between

---

[3]  The Government contends that not all of Dr. Sullivan's and Dr. Cook's testimony will be expert testimony [Doc. 203-1 pp. 1, 9].

3

prescribers, patients, and pharmacists; what constitutes a valid prescription; and the "[i]ndicators" of invalid prescriptions [*Id*. at 10].

Defendant Haney notified the Government that she will present the expert testimony of Dr. Alan Kaye [Doc. 203-2 p. 1]. Dr. Kaye will testify regarding the "practice of pain management, how topical analgesics and compounded pain creams work to treat certain pain conditions, and their viability as safe and effective treatment alternatives to opioids and narcotic controlled substances" [*Id*. at 2]. Defendant Haney's notice also states that in addition to these topics, Dr. Kaye will testify about:

- Conditions for which topical analgesics and compounded pain creams are commonly prescribed or for which they may be an appropriate treatment;

- The extent to which a prescription for a topical analgesic or compounded pain cream is medically appropriate for a specific patient's condition, including patients at Rocky Hill Pharmacy;

- The benefits of using topical analgesics and compounded pain creams as a medically accepted alternative to opioids;

- The mechanisms of action, delivery method, side effects, safety, and effectiveness of common ingredients found in compounded pain creams and topical steroids that may be used in conjunction with same, including (but not limited) to: diflorasone, betamethasone, halobetasol, ketoprofen, diclofenac, baclofen, cyclobenzaprine, ketamine, gabapentin, lidocaine, tetracaine, and amitriptyline;

- Contraindications for common ingredients found in compounded pain creams and topical steroids that may be used in conjunction with same; and

- The extent to which topical analgesics and compounded pain creams are an accepted and commonly prescribed treatment amongst pain management practitioners.

[*Id*. at 3–4].

The Government now moves to exclude the testimony of Dr. Kaye, arguing that it will not be relevant or helpful to the jury and that it is substantially prejudicial so as to confuse or mislead the jury, despite any probative value [Doc. 203 p. 1]. More specifically, the Government argues Dr. Kaye's testimony on the effectiveness and benefits of compound pain creams is irrelevant to the issues before the jury, which turn on whether the Defendants were fraudulently billing insurance plans for medications not authorized by prescribers [*Id*. at 1, 6]. It also contends that even if relevant, the danger of confusing or misleading the jury substantially outweighs the probative value of Dr. Kaye's testimony [*Id*. at 6].

Defendant Haney responded in opposition to the Government's motion, asserting that Dr. Kaye's testimony meets the low bar of relevance [Doc. 210 pp. 1–2]. Defendant Haney maintains that Dr. Kaye's opinions are directly relevant to the core issues in the Government's case and are needed to rebut the Government's experts [*Id*. at 1–2, 5–9]. She argues that Dr. Kaye's testimony is also "reliable, as it rests on well-established medical science and peer-reviewed principles[,] and helpful, as it will enable the jury to interpret complex pharmacological evidence that lies far outside ordinary knowledge" [*Id*. at 2, 10]. She contends that any risk of juror confusion can be alleviated by appropriate jury instructions and placing "targeted boundaries" on Dr. Kaye's testimony [*Id*. at 2, 11–12].

Defendants Warren [Doc. 233] and Roper [Doc. 234] moved to adopt Defendant Haney's response.

The parties appeared before the undersigned on December 1, 2025, for a motion hearing on the Government's motion to exclude [*See* Doc. 240, Minutes]. Assistant United States Attorneys Jeremy Dykes and Brian Samuelson appeared on behalf of the Government. Attorney Anthony Mahajan represented Defendant Haney. Attorney Scott Saidak represented Defendant

5

Warren. Attorney Keith Stewart represented Defendant Roper. All three Defendants were also present. After arraigning Defendants on the Third Superseding Indictment, the undersigned heard the parties' arguments on the Government's *Daubert* motion.

At the hearing, AUSA Samuelson asserted that the Government will present three types of prescriptions at trial: fabricated prescriptions, altered prescriptions, and prescriptions filed without a prescriber's signature in violation of the prescriber's orders. He asserted that the therapeutic benefits of the prescribed medications are irrelevant to whether Defendants fraudulently billed insurance plans for these prescriptions. AUSA Samuelson also argued that this testimony by Dr. Kaye will confuse the jury because it sounds like a defense when it is not. He acknowledged, however, that the Government does not object to Dr. Kaye's proposed testimony explaining compounded medications, how they are created, and generally when they may be prescribed [*See* Doc. 203 p. 2 n.2].

Mr. Mahajan argued that expert testimony is relevant not only if it presents a defense to the charge, but also if it makes a fact at issue more or less probative. He maintained that Dr. Kaye's testimony is relevant to Defendant Haney's knowledge and intent in filling the prescriptions at issue. According to counsel, whether the ingredients in a compounded medication are appropriate for the patient and approved by insurance is relevant to Defendant's knowledge and intent in filling the challenged prescriptions. Mr. Mahajan argued that the pharmacy is permitted to substitute ingredients in a compounded medication, and Dr. Kaye will testify about whether a substituted ingredient is appropriate for the patient. Finally, Mr. Mahajan argued that the Government agrees that some of Dr. Kaye's proposed testimony is appropriate and exclusion of Dr. Kaye's testimony at this stage of the proceedings is premature.

Mr. Saidak stated that Dr. Kaye is not contractually obligated to present testimony for Defendant Warren. He argued, however, that all defense counsel would question Dr. Kaye and would have the benefit of his testimony. In this regard, Mr. Saidak said he adopted Mr. Mahajan's arguments in opposition to the exclusion of Dr. Kaye's testimony.

Mr. Stewart agreed with Mr. Mahajan's and Mr. Saidak's positions. He stated that Defendant Roper would benefit from Dr. Kaye's testimony, although he was not her witness and had no contractual obligation to Defendant Roper. Mr. Stewart also argued that exclusion of Dr. Kaye's testimony is premature and that the Government is trying to limit the Defendants to its theory of the case, which is that ingredients in compounded medications were substituted for profit and to defraud.

AUSA Samuelson responded that while Defendants' intent is at issue, the question is whether Defendants knowingly made false representation to insurers, not whether they were helping the patients. He asserted that whether a particular medication could be safely prescribed does not matter if the provider did not prescribe that medication. AUSA Samuelson maintained that Defendants substituted ingredients or medications to increase the cost to the insurer and whether those substitutions were also generally beneficial is not relevant.

After hearing the parties' arguments, the Court took the matter under advisement. It is ripe for adjudication.

## II.    ANALYSIS

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

7

> opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The requirement that an expert's testimony must assist the jury in understanding evidence or determining a contested fact "goes primarily to relevance." *United States v. Fairley*, 137 F.4th 503, 516 (6th Cir.) (quoting *Daubert*, 509 U.S. at 591), *cert. denied*, 2025 WL 2824046 (Oct. 6, 2025). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970–71 (M.D. Tenn. 2002) (quoting *Daubert*, 509 U.S. at 593–94), *aff'd*, 89 F. App'x 927 (6th Cir. 2003); *see also United States ex rel TVA v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 749 (6th Cir. 2016) (explaining that the party offering the expert has the burden of proving admissibility). A district court evaluating evidence proffered under Rule 702 must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

The Government challenges only the relevance of Dr. Kaye's testimony under Rule 702, arguing "the [benefits and] efficacy of pain cream is neither an element of the charges nor is it relevant to any defense" [Doc. 203 p. 1]. To be relevant, an expert's testimony must "logically

advance[] a material aspect of the proposing party's case." *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017) (citation omitted and modified). Indeed, the "relevancy bar is low." *Id.* (citation omitted). The United States Court of Appeals for the Sixth Circuit "has held that 'Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Id.* (citation omitted) "The 'rejection of expert testimony is the exception, rather than the rule.'" *Id.* (citation omitted).

Defendant Haney is charged with conspiracy to commit wire fraud. To convict her, "the government must prove beyond a reasonable doubt that [she] knowingly and willfully joined in an agreement with at least one other person to commit an act of [wire] fraud and that there was at least one overt act in furtherance of the agreement." *United States v. Cunningham*, 679 F.3d 355, 373 (6th Cir. 2012) (quoting *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005) (internal citations modified and omitted)). As part of the manner and means of the wire fraud conspiracy, the Third Superseding Indictment alleges that Defendants Haney, Warren, and Roper "submitted, caused to be submitted, or aided and abetted the submission of, via wire transmission in interstate commerce[,] additional claims for medications that were not dispensed pursuant to a valid prescription, and therefore not eligible for reimbursement" [Doc. 217 ¶ 28].

Defendant Haney argues Dr. Kaye's testimony is relevant to her *mens rea*, to rebut the Government's experts, and to explain compounded medications to the jury. Before turning to those arguments, Defendants Warren and Roper seek to adopt Defendant Haney's arguments for the relevance and admissibility of Dr. Kaye's testimony [*See* Docs. 223 & 224]. At the motion hearing, both Defendants acknowledged that Dr. Kaye is not their witness, that they did not provide notice to the Government of their intent to call him as a witness, and that they have no contractual

relationship with Dr. Kaye. Thus, Defendants Warren and Roper have demonstrated no basis to join in Defendant Haney's response.

Starting with Defendant Haney's argument about *mens rea*, the Government submits that "the issue for the jury is whether Defendant Haney and the other defendants unlawfully and fraudulently added medicines to medical providers' prescriptions without authorization and whether they unlawfully and fraudulently fabricated prescriptions" [Doc. 203 p. 5]. Defendant asserts that Dr. Kaye, an anesthesiologist, pharmacologist, and director of pain medicine, will testify regarding "[t]he extent to which a prescription for a topical analgesic or compounded pain cream is medically appropriate for a specific patient's condition, including patients at Rocky Hill Pharmacy" [Doc. 203-2 p. 4]. She claims that "[b]efore determining whether [Defendant Haney's] conduct was fraudulent, the jury must first assess whether the medications allegedly 'added' or 'fabricated' were in fact medically appropriate, therapeutically justified, and consistent with accepted pain-management practices, i.e., the kinds of compounds a legitimate prescriber would prescribe for the patients at issue" [*Id.* at 6]. She maintains that whether the filled medications are medically appropriate "will assist the jury in determining whether the prescriptions at issue were fabricated or whether [she] lawfully dispensed medications pursuant to valid prescriber orders" [*Id*. at 7]. At the hearing, Mr. Mahajan explained that if the medications were medically necessary and appropriately substituted, it would show lack of intent or knowledge on the part of Defendant Haney. Hence, that a particular medication provided or substituted is medically appropriate to treat a specific patient is relevant to Defendant Haney's knowledge that the prescription was invalid.

Defendant also argues that Dr. Kaye's testimony is relevant to rebut the testimony of the Government's experts. The Government provides notice that its experts, Drs. Sullivan and Cook, will testify regarding the relationship between prescribers, patients, and pharmacists; what

10

constitutes a valid prescription; and the "[i]ndicators" of invalid prescriptions [Doc. 203-1 pp. 4–5, 10]. Defendant asserts that Dr. Kaye will counter this testimony by showing that compounded pain medications are accepted in legitimate pain management, thereby "rebut[ting] the Government's implication that such formularies are inherently suspicious or signal invalidity of the prescription" [Doc. 210 p. 9]. Dr. Kaye will also testify about physician-pharmacist relationship and how prescribers and pharmacists collaborate "to tailor compounds to patient-specific needs, [which] contradicts the Government's portrayal of these prescriptions as automatically invalid or unauthorized because of additions and/or changes made to any given prescription" [*Id*.]. Thus, Dr. Kaye's testimony is relevant to the jury's determination of whether a prescription is valid or invalid and Defendant's knowledge of its validity or invalidity.

Finally, Defendant argues that Dr. Kaye's testimony is relevant to explain compounded medications to the jury. She asserts that Dr. Kaye "will explain when and why physicians prescribe compounded topical preparations for pain management, particularly when oral opioids or conventional therapies are contraindicated, [and] how [compounded medications] are formulated and dispensed, including that compounding is routinely performed for individualized patient needs in compliance with professional standards" [*Id*. at 6]. She maintains Dr. Kaye will also testify to the ingredients commonly used in compounded pain creams [*Id*.]. The Government "concedes that an explanation regarding compounding in general terms is relevant" [Doc. 203 p. 2 n.2.]

For these reasons, Defendant demonstrates by a preponderance of the evidence Dr. Kaye's proffered testimony "logically advance[s] a material aspect of [her] case," i.e., that she did not knowingly fill invalid prescriptions. *LaVictor*, 848 F.3d at 442.

But even relevant expert testimony may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."

11

*Fairley*, 137 F.4th at 516 (quoting *LaVictor*, 848 F.3d at 444 & Fed. R. Evid. 403) (omission in original). The Government argues that if the Court finds Dr. Kaye's testimony is relevant, it should still be excluded under Rule 403 because it risks confusing the jury. At the motion hearing, AUSA Samuelson argued that Dr. Kaye's testimony on the therapeutic benefits of compounded pain creams may foster an erroneous belief by the jurors that a beneficial medication is a defense to altering or fabricating a prescription. But the jury will have the benefit of the District Judge's instructions on the proper law to apply and the testimony of the Government's experts. So, at this time, the undersigned does not find the Government has demonstrated the risk of juror confusion substantially outweighs the probative value of Dr. Kaye's testimony. The Government may nevertheless raise an objection to Dr. Kaye's testimony pursuant to Rule 403 again in the context of the trial.

### III. CONCLUSION

After careful consideration of the parties' arguments, the relevant law, and the record in this case, the undersigned finds no basis to exclude the testimony of Defendant Haney's expert Dr. Alan Kaye under Rule 702. But the Government may raise an objection to Dr. Kaye's testimony pursuant to Rule 403 in the context of the trial. Accordingly, the Court **DENIES** the Government's motion [**Doc. 203**]. And for the reasons explained here, the Court **DENIES** Defendant Warren's and Defendant Roper's motions to adopt Defendant Haney's response [**Docs. 223 & 224**].

**IT IS SO ORDERED**.

ENTER:

Jill E. McCook
United States Magistrate Judge