UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TIFFANY HANEY, )<br>ANNE WARREN, and )<br>TINA ROPER, )<br>)<br>Defendants. ) | No.: 3:24-CR-113-TAV-JEM |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss the Third Superseding Indictment and, in the alternative, for an Evidentiary Hearing and Sanctions for Discovery Violations and Potential Spoliation [Doc. 260]. The Court ordered expedited briefing [Doc. 261]. The government has responded [Doc. 265] and defendants have replied [Doc. 266]. This matter is now ripe for the Court's review. For the reasons below, defendants' motion [Doc. 260] is **DENIED**.

    A.    **Timeliness of Disclosure**

In their motion, defendants contend that the government's January 25, 2026, disclosure of text messages between Federal Bureau of Investigation ("FBI") Agent Emily Celeste and potential government witnesses Michelle McKnight, Ashley Campbell, and Jennifer Daugherty were belatedly disclosed, citing both Judge McCook's order regarding production of *Brady* material no later than December 10, 2025, and a supposed agreement to disclose *Jencks* material no later than January 20, 2026 [Doc. 260, pp. 3, 11]. Defendants

allege that the content of the text messages reveals "extensive *Brady* information" [*Id*. at 5–6]. Defendants further argue that Agent Celeste's text messages with other potential government witnesses have not been produced [*Id*. at 3].

The government disagrees with the characterization that this production contains "extensive *Brady* information," but states that, regardless, it turned over the messages promptly upon receiving them from the agent, and the defense now has them in time for effective use at trial [Doc. 265, p. 3]. Additionally, the government states that it did not interpret the December 10, 2025, discovery deadline to require the disclosure of Jencks Act material [*Id*.]. The government states that it "represented at the final pretrial conference that it is working expeditiously to produce Jencks Act material. Although the process has taken longer than anticipated, that remains true, and the United States anticipates producing more material in the coming days" [*Id*. at 5].

Defendants reply that they "have been prejudiced by the government's failure to timely produce *Brady*, *Jencks* and *Giglio* in violation of Judge McCook's discovery deadlines . . . and the parties' agreements" [Doc. 266, p. 2]. Defendants again assert that the government agreed to produce any remaining Jencks and all *Giglio* material no later than January 20, 2026 [*Id*. at 3]. Defendants request the Court exclude the testimony of any trial witness for whom the government has not complied with its disclosure obligations at this late stage [*Id*. at 2].

First, the Court notes that, from the government's response, it appears that all of the information in the January 25, 2026, disclosure, and the anticipated future disclosures, is Jencks material [*See* Doc. 265, pp. 3, 5]. But Judge McCook's December 10, 2025, deadline did not apply to Jencks material [*See* Doc. 240, p. 1 (referring generally to "deadlines for discovery"). Indeed, as stated in *United States v. Whipple*:

> The Jencks Act provides that the Government cannot be compelled to produce its witnesses' statements or reports until after the witness testifies on direct examination. 18 U.S.C. § 3500; *see also* Fed. R. Crim. P. 26.2. The Court cannot compel the Government to disclose Jencks Act materials at a time earlier than what the Act itself permits. *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988); *see also United States v. Algie*, 667 F.2d 569, 571–72 (6th Cir. 1982). Although the Court possesses inherent power over the provision of discovery, it "c[an] not use its inherent power to compel the government to produce Jencks Act material prior to trial." *United States v. Perkins*, No. 12–11–DLB–EBA, 2014 WL 3436074, *13 (E. D. Ky July 11, 2014) (citing *Algie*, 667 F.2d at 572)").

*United States v. Whipple*, No. 3:20-cr-31, 2021 WL 5762329, at *2 (E.D. Tenn. Dec. 2, 2021). Thus, consistent with the case law, Judge McCook did not order the production of Jencks material by December 10, 2025, and, as a result, the January 25, 2026, disclosure was not untimely under Judge McCook's order.

Moreover, the Sixth Circuit has held that "[if] impeachment evidence is within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence. The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial." *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988). Thus, "[w]hen *Brady* material sought by a defendant is covered

3

by the Jencks Act . . . , the terms of that Act govern the timing of the government's disclosure" *United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994) (footnote omitted). "Put another way: the Jen[c]ks Act trumps *Brady* where impeachment evidence is Jencks Act material." *United States v. Brazil*, 395 F. App'x 205, 215 (6th Cir. 2010). Accordingly, because the information contained in the January 26 disclosure, and the apparently forthcoming information, is all Jencks material, only the required timeline of the Jencks Act applies to its disclosure. And the Jencks Act only requires that such information be disclosed "[a]fter a witness called by the United States has testified on direct examination[.]" 18 U.S.C. § 3500(b); *see also United States v. Watson*, 787 F. Supp. 2d 667, 673 (E.D. Mich. 2011) ("[T]he Jencks Act prohibits a court from ordering disclosure of Jencks material before the witness has testified in direct examination"). Because the trial has not yet commenced, the disclosure of Jencks material is not untimely under the statute.

The third potential deadline at issue is the alleged agreed-upon January 20, 2026, deadline for early disclosure of Jencks material. But, while defendants repeatedly allege that the government agreed to this deadline for disclosure of Jencks material, they have presented the Court with no evidence of such an agreement between the parties. Nor have defendants provided any legal authority regarding the enforceability of any agreement between the parties to expedite the disclosure of Jencks Act material. Accordingly, defendants have not established that sanctions of any sort are warranted based on the disclosure of Jencks material beyond the allegedly agreed-upon January 20, 2026, deadline.

4

Nonetheless, the Court notes that, "[a]lthough the Jencks Act permits the government to wait for disclosure until after the witness testifies, the Sixth Circuit has encouraged the government to provide the information earlier in appropriate cases in order to prevent delay at trial." *United States v. Ravelo-Rodriguez*, No. 3:11-cr-70, 2012 WL 928280, at *4 (E.D. Tenn. Mar. 19, 2012) (citing *United States v. Minsky*, 963 F.2d 870, 876 (6th Cir. 1992)); *see also United States v. Ross*, No. 3:23-cr-128, 2024 WL 6047397, at *5 (E.D. Tenn. Oct. 11, 2024) ("While required disclosure of Jencks Act materials is after the witness's direct testimony, the Court encourages earlier disclosure[.]").

Moreover, the typical practice of the United States Attorney's Office in this district to produce all Jencks Act materials by the Friday before trial begins the following Tuesday. *See United States v. Ross*, No. 3:23-cr-128, 2024 WL 6047397, at *5 (E.D. Tenn. Oct. 11, 2024) (noting that the government represented that it "customarily discloses Jencks materials the Friday before trial); *see also United States v. Whipple*, No. 3:20-cr-31, 2021 WL 5762329, at *2 (E.D. Tenn. Dec. 2, 2021); *United States v. Wise*, No. 3:20-cr-46, 2022 WL 17869821, at *4 (E.D. Tenn. Dec. 22, 2022); *United States v. Rose*, No. 3:23-cr-51, 2024 WL 5202757, at *4 (E.D. Tenn. Dec. 23, 2024); *United States v. Stimpert*, No. 3:21-cr-107, 2022 WL 4391740, at *9 (E.D. Tenn. Sept. 22, 2022); *United States v. Newman*, No. 3:19-cr-59, 2020 WL 7294644, at *3 (E.D. Tenn. Dec. 10, 2020). **The Court strongly encourages the government to follow this custom and produce all Jencks material to defendants no later than Friday, January 30, 2026**.

Finally, the Court notes that it "has the authority to order disclosure of the government's witness list in advance of trial." *Watson*, 787 F. Supp. 2d at 674 (citing *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir. 1980)); *see also Rose*, 2024 WL 5202757, at *6 ("[T]he Court has discretion to order the government to produce discovery not required by Rule 16, including a witness list, pursuant to its inherent powers"). Here, to offset any potential prejudice from the disclosure of Jencks material close to the trial date, and particularly given the anticipated length and complexity of this case, the Court finds it appropriate to order the government to provide at least a partial witness list to aid defendants in preparation of the recently-received materials. Accordingly, the government is **ORDERED** to provide defendants with a list of its anticipated witnesses to be called the first week of trial, that is, February 3 to February 6,[1] no later than **Friday, January 30, 2026**.

### B. Purported Manipulation of January 25 Disclosure

Additionally, defendants argue that the "actual text messages" and a "complete record of all communications" between the FBI and McKnight, Campbell, and Daughtery has not been produced [Doc. 260, p. 3]. Specifically, defendants argue that "numerous irregularities and manipulations are obvious throughout the" copy of the text messages that defendants received [*Id*. at 4]. Defendants note that some text messages reflect that they took place on December 29, 2026, a future date that has not yet occurred, or jump from

---

[1] The Court notes it is probable that little, if any, witness testimony will occur on the first day of trial, February 3, given the anticipated length of voir dire and opening statements.

December 2024 to December 2025 and then back to January 2025 [*Id*.]. Defendants also contend that the text messages contain manual deletions, misspellings, and extensive typographical errors, as well as redactions with no indication of such or explanation of the redactions [*Id*. at 4–5]. Finally, defendants contend that the files contain "numerous blanks and missing data elements" [*Id*. at 4].

The government responds that, regarding the erroneous dates, the messages were produced with the dates assigned to them by the Textport application, and the text messages are in the correct order [Doc. 265, p. 2]. The government also notes that it redacted certain information from McKnight's text messages involving the make and model of particular individuals' vehicles, and about a medical incident, as these details are not exculpatory, have no impeachment value, and do not relate to the subject matter about which the witness will testify, and thus, the government is not aware of any obligation to produce them [*Id*.]. Additionally, to the extent defendants complain of "blanks and missing data elements," the government explains that the relevant information is contained in the excel-style printout, and the boxes that appear empty are simply "formatting quirks" [*Id*. at 2–3]. The government contends that defendants have cited no authority supporting an assertion that they are entitled to "text messages in their original, native format" [*Id*. at 4].

Defendants reply that the government has not explained how an automated export would contain spelling errors in the header of the excel file, why timestamps are incorrect, internally inconsistent, and out of chronological sequence, and why associated file names and attachments contain unexplained blank spaces [Doc. 266, p. 5].

7

Case 3:24-cr-00113-TAV-JEM    Document 269    Filed 01/29/26    Page 7 of 13
PageID #: 3665

Defendants' arguments in this regard amount to mere speculation about the existence of additional discoverable evidence in the government's possession. The government explained that the files provided are the files that the FBI's Textport application provided based on the messages on Agent Celeste's phone, with the exception of minor redactions, which the government has explained. Despite this explanation, defendants seem to suggest that the date errors, typographical errors, and formatting issues are evidence of nefarious concealment of information. But the government has denied the existence of additional discoverable text messages between the relevant parties. And the Sixth Circuit has observed that "while the *Brady* rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." *Presser*, 844 F.2d at 1281; *see also United States v. Covington*, No. 3:23CR68-1, 2025 WL 1441972, at *7 (E.D. Va. May 19, 2025) ("There is no *Brady* violation when there is no record evidence to the contrary and a Defendant offers no more than rank speculation as to the nature of the allegedly suppressed materials" and the Jencks Act similarly "does not authorize fishing expeditions by the defendant" (internal quotation marks omitted)). Further, "because the defendants have neither particularly identified undisclosed Jencks Act statements, nor cast substantial doubt as to whether the government possesses information which could arguably be 'statements' under the Jencks Act, the court finds that defendants have not demonstrated any need for the court to conduct an in camera review of the government's files for any statements which might exist." *United States v.*

8

*Burger*, 773 F. Supp. 1419, 1427 (D. Kan. 1991) (citing *United States v. Page*, 808 F.2d 723, 730 (10th Cir. 1987)).  In sum, the Court does not find that defendants' arguments in this regard provide grounds for an evidentiary hearing or sanctions.

    **C.**    **Spoliation**

Next, defendants argue that the record of text messages between Agent Celeste and Campbell reflect missing messages, and contend that they are entitled to explore the extent to which text messages have not been preserved [Doc. 260, p. 6].  Defendants contend that the facts that they "have been provided false, incomplete, and manipulated files purporting to be text messages between the case agent and key government witnesses" indicates potential spoliation, which must be developed [*Id*. at 7].  Defendants also contend that Agent Celeste used multiple phones to communicate with government witnesses, including a government cell phone and a personal cell phone with a (205) area code [*Id*. at 10]. Defendants suggest that Agent Celeste's use of a personal cell phone "may constitute a violation of FBI policy and have resulted in potential spoliation of evidence, including *Brady* evidence" [*Id*. at 11].

The government responds that Agent Celeste confirmed that, except for one logistical message, there are no missing messages where defendants suggest [Doc. 265, p. 3].  The government also states that the text messages at issue were collected from Agent Celeste's FBI-issued work phone, which has a (205) area code, but is not her personal cell phone [*Id*. at 1 and n.1].

9

In reply, defendants contend that the government has tacitly admitted that it failed to preserve text messages, otherwise, it would not be necessary for the Court to accept the Assistant United States Attorney's representation that Agent Celeste made an out-of-court representation that "there are not" missing messages [Doc. 266, pp. 3–4]. Defendants assert that, regardless of when the government believed their Jencks disclosures were due, if the government did not preserve text messages by government witnesses, those witnesses should be excluded because it will be impossible for the government to meet their obligation to disclose Jencks material following the witness's direct testimony [*Id*. at 4].

Nothing presented by defendants suggest spoliation of text messages between Agent Celeste and the three witnesses currently at issue. As noted previously, the government has represented that the text messages provided are, with the exception of some minor redactions, the full text messages between Agent Celeste and these three witnesses. Defendants provide only speculation that additional evidence exists. That speculation does not warrant an evidentiary hearing.

Further, the government's representation that Agent Celeste confirmed that there were no missing text messages in the gaps where defendants believe additional messages should exist does not suggest spoliation. Rather, it appears to be a good faith effort by the government to confirm, upon defendants' complaint, that there were no additional text messages that were not encompassed by the Textport application's report of Agent Celeste's cell phone. Ultimately, defendants' speculation regarding spoliation does not warrant an evidentiary hearing or sanctions.

10

### D. Additional Disclosures

Defendants also contend that the government has not produced text messages from Campbell's, Daughtery's, or McKnight's telephone materials, which it was obligated to produce by January 20, 2026, pursuant to an agreement with defense counsel [Doc. 260, p. 11].

The government responds that these phones are not in its possession, and thus, fall outside its discovery obligations [Doc. 265, pp. 3–4 (citing Fed. R. Crim. P. 16(a)(1)(E)(i))].

First, the Court notes that it has already determined that defendants have not sufficiently established the existence of a January 20, 2026, deadline for disclosures. Nonetheless, "[a]s a general rule, only documents in the government's possession or the possession of others working jointly with the government, are subject to Rule 16(a)(1)(C)." *United States v. Skeddle*, 176 F.R.D. 258, 261 (N.D. Ohio 1997). The government states that the phones and/or the text message records of these three witnesses are not in their possession. Accordingly, defendants have not shown that such evidence is discoverable, and no evidentiary hearing or sanctions are warranted on this ground.

### E. Alleged Misconduct by Agent Celeste

Next, defendants contend the text messages between Agent Celeste and McKnight reveal extensive misconduct, including "collud[ing] over social media postings relating to the case," and "sharing confidential law enforcement information" [Doc. 260, pp. 7–10]. In their reply brief, defendants assert that they "are entitled to a hearing to explore the

11

extent of this corrupt use of social media by Agent Celeste and McKnight using various aliases, if not outright exclusion of McKnight's testimony given how compromised this relationship was" [Doc. 266, p. 3].

Notably, however, defendants cite no legal authority in support of their assertion that the charges in this case should be dismissed or an evidentiary hearing granted based on the alleged misconduct of Agent Celeste in communications with McKnight. Moreover, it appears that the propriety of the information exchanged between Agent Celeste and McKnight is more appropriately addressed through cross-examination at trial. The Court concludes defendants have presented no ground for the requested relief.

### F. New Arguments in Reply

For the first time in their reply brief, defendants assert that Agent Celeste used a "shoddy" software, rather than another software the FBI has, called "Cellebrite," to copy her text messages [Doc. 266, p. 6]. Defendants ask the Court to "issue an order permitting Defendants (or the U.S. Attorney's Office), using FTI Consulting experts at their cost, to make an immediate Cellebrite image of Agent Celeste's phone" [*Id.*]. They also ask the Court to order the government to provide a status report regarding their collection, preservation, and production of e-communications for all members of the investigative and prosecution team [*Id.*].

"As the Sixth Circuit has held in the past, issues raised for the first time in a reply brief are considered waived since reply briefs are intended to address the arguments made in opposing party's Response brief and the non-moving party ordinarily has no opportunity

12

Case 3:24-cr-00113-TAV-JEM    Document 269    Filed 01/29/26    Page 12 of 13
PageID #: 3670

o respond to any new arguments that are asserted in a Reply brief." *United States v. Harris*, No. 5:22-cr-28, 2024 WL 4810389, at *3 (E.D. Ky. Oct. 9, 2024) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). Regardless, defendants have cited no legal authority for these newly raised requests. Accordingly, this requested relief is denied.

G. **Conclusion**

For the reasons set forth herein, Defendants' Motion to Dismiss the Third Superseding Indictment and, in the alternative, for an Evidentiary Hearing and Sanctions for Discovery Violations and Potential Spoliation [Doc. 260] is **DENIED**. However, the Court **strongly encourages** the government to follow its typical custom and produce all Jencks material to defendants no later than **Friday, January 30, 2026**. Finally, the government is **ORDERED** to provide defendants with a list of its anticipated witnesses to be called the first week of trial, that is, February 3 to February 6, no later than **Friday, January 30, 2026**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE