UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:24-CR-113-TAV-JEM |
| | ) | |
| TIFFANY HANEY, ANNE WARREN, | ) | |
| and TINA ROPER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court on consideration of the government's first motion *in limine*, contained within its omnibus motion [Doc. 241, pp. 1, 3–4], defendant Tina Roper's fourteenth motion *in limine*, contained within her omnibus motion [Doc. 242, p. 4], and defendant Tiffany Haney's motion *in limine* [Doc. 244].

I.  The Parties' Arguments

   A.  The Government's Motion *in Limine*

In its first motion *in limine* [Doc. 241, pp. 1, 3–4], the government states that it has identified approximately 1,200 prescriptions filled at Rocky Hill Pharmacy ("RHP") that it may introduce at trial as evidence of the alleged fraud, leaving many other prescriptions that the government does not intend to introduce. The government argues that defendants should be precluded from eliciting testimony or offering into evidence these "other prescriptions" for the purpose of showing that defendants "sometimes filled valid prescriptions" [*Id.* at 3]. The government submits that "individual instances of non-criminal conduct have no relevance to the charges at issue" [*Id.* (quoting *United States v. Householder*, 645 F. Supp. 3d 844, 852–53 (S.D. Ohio 2022))]. Moreover, evidence of valid prescriptions would confuse the jury about

the allegations actually at issue and mislead the jury into thinking that "fraudulent conduct may be excused by other, innocent conduct" [*Id.* at 4 (citation omitted)]. Lastly, the presentation of such evidence would cause undue delay and waste time [*Id.* (citing Fed. R. Evid. 403)].

In response, defendants contend that evidence of prescriptions outside the government's exhibit list are admissible pursuant to Federal Rules of Evidence 401, 402, and 403 because this evidence "bears directly on [d]efendants' intent, knowledge, absence of mistake, and the legitimate scope" of RHP's operations [Doc. 248, p. 7]. Furthermore, "[e]vidence that [RHP] consistently processed valid prescriptions is highly probative of [d]efendants' lack of motive or intent to engage in the alleged wire fraud conspiracy" [*Id.*]. Defendants also argue that excluding valid prescription evidence would "distort the factual record and mislead the jury[,]" as the absence of such evidence would leave a false impression that all, or even most, of RHP's operations were suspect or fraudulent [*Id.*]. Finally, defendants submit that prescriptions beyond those identified as government exhibits readily satisfy Rule 403's balancing test as such evidence "lies at the core of the defense and carries substantial probative value, while posing no risk of unfair prejudice to the [g]overnment" [*Id.*].

In reply, the government asserts that defendants seek to argue that "certain prescriptions cannot have been fraudulent because different, unrelated prescriptions were valid[,]" an argument prohibited by case law [Doc. 250, pp. 2–3 (citing, in part, *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014))]. In particular, the government focuses on two cases out of the Eastern District of Michigan—*United States v. Kouza*, No. 20-cr-20430, 2024 WL 3236703 (E.D. Mich. June 28, 2024) and *United States v. Judd*, 672 F. Supp. 3d 389 (E.D. Mich. 2023) [*Id.* at 2–4]. In each of these cases, in which healthcare fraud was alleged, the

2

government moved to preclude evidence of "legitimate billing" [*Id.* at 3 (citations omitted)]. And in each case the defendants objected [*Id.* (citation omitted)]. Specifically, in *Kouza*, the defendants argued that such evidence was "critical" to their defense of negligence [*Id.* (citing 2024 WL 3236703, at *2)]. In *Judd*, the defendant argued that he should be allowed to present such evidence "to counter the argument that he was knowingly and willfully trying to defraud" [*Id.* (quoting 672 F. Supp. 3d at 393)]. In each case, the court granted the government's motion, finding that instances of legitimate billing had no bearing on whether the defendant(s) were guilty of the fraudulent conduct charged by the government [*Id.* (citations omitted)].

At the final pretrial conference [Doc. 255], defendants claimed that the case law cited by the government was distinguishable from this case. In particular, defendants asserted that such cases dealt with the introduction of "isolated instances" of proper billing, and here, the predominant practice was proper billing. And, on the other side of the coin, defendants argued that the government here is attempting to take isolated instances of alleged fraudulent billing and prove a pattern and practice from these instances. Specifically, defendants averred that the government intends on introducing select prescriptions out of a larger "stack" that do not accurately portray the prescriber's pattern and what defendants understood the prescriber's pattern to be, going to knowledge and intent. In response, the government maintained that defendants were seeking to introduce evidence of "other prescriptions" for propensity purposes, which is forbidden [*Id.*].

B.   **Defendant Roper's Motion** *in Limine*

In her motion *in limine*, defendant Roper requests that, pursuant to Rules 401 and 402, the Court exclude "irrelevant pharmacy/medical/billing records not directly related to the alleged conspiracy and limit the government to the relevant issues specific to the charges

3

Case 3:24-cr-00113-TAV-JEM | Document 287 | Filed 01/30/26 | Page 3 of 14
PageID #: 3773

alleged" in the Third Superseding Indictment [Doc. 242, p. 4].  In support of this request, defendants[1] submit that they "seek to limit the evidence in this trial to the relevant issues and manageable exhibits" [*Id.* at 8].

In response, the government contends that defendants do not specify which "records" they are referring to, and therefore, the Court cannot rule on their relevance [Doc. 247, p. 6].

At the final pretrial conference [Doc. 255], the Court first noted the seeming relationship between defendant Roper's motion [Doc. 242, p. 4] and the government's first motion *in limine* [Doc. 241, pp. 1, 3–4].  Defendants appeared to agree with this assessment, arguing that, if the government puts on proof of a single prescription, defendants should be able to put in every other prescription that the same provider had filled at RHP.  Accordingly, defendants asserted that the relevance of "pharmacy/medical/billing records" would depend on the government.  Furthermore, defendants stated that they should be able to use such records in assessing the credibility of witnesses, particularly providers who may testify as to not authorizing specific prescriptions.

### C. Defendant Haney's Motion *in Limine*

In her motion *in limine*, defendant Haney moves the Court to preclude the government from introducing at trial:

> [A]ny evidence, testimony, exhibits, or argument concerning [her] alleged "lavish" or "extravagant" lifestyle, including but not limited to references to expensive purchases, private aircrafts, boats, high-end vehicles, designer goods, real estate, or photographs and/or videos depicting such items.

---

[1] At the final pretrial conference [Doc. 255], the Court granted defendant Anne Warren and defendant Haney's motions to adopt defendant Roper's motion *in limine* [*See* Docs. 243, 245].

[Doc. 244, p. 1]. In support of this request, defendant Haney draws the Court's attention to *United States v. Jackson-Randolph*, 282 F.3d 369, 378 (6th Cir. 2002), in which the Sixth Circuit "devised a three-factor test to evaluate the admissibility of evidence of a defendant's wealth" [*Id.* at 3]. Specifically, as defendant Haney submits, evidence of wealth is admissible under Rule 403 only if all the following factors are met: "(1) there is other credible evidence, direct or circumstantial, of the illegal activity; (2) the money spent was not available to the defendant from a legitimate source; and (3) the accumulation of great wealth or extravagant spending relates to the period of the alleged illegal activity" [*Id.* at 3–4 (citing *Jackson-Randolph*, 282 F.3d at 378)]. The government, defendant Haney argues, cannot satisfy the *Jackson-Randolph* framework [*Id.* at 4].

As to Rule 401, defendant Haney submits that evidence concerning her luxury travel, vehicles, real estate, or discretionary spending has no bearing on whether she committed any of the offenses charged in the indictment [*Id.*]. As to the money laundering allegations specifically, defendant Haney argues that the transactions identified in the indictment are "limited to alleged transfers from a [RHP] account to a personal bank account[,]" and therefore, "[w]hether [she] later used those funds . . . for travel, purchases, or personal expenses is wholly irrelevant" to the charged offenses [*Id.* at 5]. Even if such evidence had some marginal relevance in this case, defendant Haney contends that Rule 403 mandates its exclusion because "its minimal probative value is substantially outweighed by the danger of unfair prejudice and jury confusion" [*Id.* at 6]. Specifically, the admission of such evidence would subject defendant Haney to "class-based prejudice" [*Id.*].

Furthermore, defendant Haney argues that the government neither alleges, nor can it prove, that the funds she used to support her "lifestyle" or "purchases" were derived from an

5

illegitimate source [*Id.*]. Defendant points out that the prescriptions at the core of the government's case only account for approximately $2.9 million in reimbursements, which is only a fraction of the estimated $32 million revenue generated by RHP during the relevant period [*Id.*]. And given that the government has requested the Court exclude evidence of prescriptions beyond which it has identified as trial exhibits, the government has confined itself to that $2.9 million [*Id.*]. Defendant Haney submits that, therefore, there remains millions of dollars of unchallenged revenue which she used to support her lifestyle [*Id.* at 6–7].

Moreover, defendant Haney asserts that allowing the government to allude to "luxury purchases and/or experiences" presents a substantial risk of inflaming the jury, and it invites a "verdict driven by emotion, moral judgment, or socioeconomic bias, rather than proof of the charged offenses" [*Id.* at 7 (citation omitted)]. Ultimately, defendant Haney contends, allowing such evidence would divert the jury's attention away from guilt and transform this trial into "a referendum on wealth rather than culpability" [*Id.*].

In response, the government argues that the evidence of defendants' lavish and extravagant lifestyles is not unfairly prejudicial and is relevant to show "that the charged fraud occurred, that the defendants knew about it, and that they had a motive to participate in it" [Doc. 246, p. 1]. The government states that it intends to show at trial that defendants profited from their fraud by introducing evidence that, only a few years after RHP opened, defendants were living lifestyles "above the means of legitimate pharmacists[,]" e.g., the accrual of millions of dollars in stocks and real estate, the purchase of a luxury lake house, and chartered flights on private planes [*Id.*].

This evidence, the government asserts, is relevant to the charged offenses in three ways [*Id.*]. First, it directly supports the alleged fraud as defendants' high revenue "makes the

6

existence of the alleged fraud more probable" [*Id.* at 1–2].  Second, the evidence is relevant to prove defendants' motive as "[f]inancial gain and a luxurious lifestyle are powerful incentives" [*Id.* at 2].  Third, the evidence is relevant to prove defendants' knowledge [*Id.*].  Specifically, "[t]he fact that the defendants were living lifestyles far above the means of legitimate pharmacists makes it less likely they were ignorant of the fraud and less plausible that they believed in good faith that the pharmacy was doing only legitimate business" [*Id.*].  And furthermore, the government avers, evidence of large personal expenditures shows that defendants *knew* they were making a lot of money [*Id.*].

As to Rule 403, the government submits that expenditures such as stocks, real estate, and chartered flights are "not particularly salacious[,]" and do not suggest that defendants committed other, charged crimes or that defendants were involved in inflammatory vices such as gambling [*Id.* at 2–3].  And while defendants raise the danger of "class-based animus," this danger can be "easily neutralized through voir dire and jury instructions" [*Id.* at 3].

The government also contends that *Jackson-Randolph* actually supports its position [*Id.*].  Specifically, in *Jackson-Randolph*, the Sixth Circuit affirmed the admission of evidence about defendant's "extravagant lifestyle and spending" in a mail fraud and money laundering case, finding such evidence "probative of [the defendant's] participation in the alleged fraud and embezzlement because it demonstrated expenditures and wealth accumulation grossly in excess of her legitimate income and assets" [*Id.* (quoting 282 F.3d at 380)].  And here, all three factors laid out by the Sixth Circuit in *Jackson-Randolph* are present [*Id.*].  First, the government submits that defendants do not appear to dispute the first and third factors, leaving only the second factor: "the money spent was not available to the defendant from a legitimate source" [*Id.*].  See *Jackson-Randolph*, 282 F.3d at 378.  As to this second factor, the

7

government highlights that "defendants do not assert that their money came from any source but the pharmacy" [*Id.* at 4]. And the gross revenue of RHP says "very little about [RHP's] profits in the absence of fraud" [*Id.*]. Ultimately, the government submits, if defendants are asserting that a small, relatively new pharmacy could, through legitimate business alone, "generate sufficient profit in a few years to fund multi-million-dollar investment accounts" and luxury expenses, "that assertion should be left for the jury to evaluate" [*Id.*].

The government cites to two cases in support of its arguments: *United States v. Chalhoub*, 946 F.3d 897 (6th Cir. 2020) and *United States v. Sosa-Baladron*, 800 F. App'x 313 (6th Cir. 2020) [*Id.* at 4–5]. In *Sosa-Baladron*, the government submits that the Sixth Circuit affirmed the district court's admission of two photographs of the defendant's home despite "[t]he lack of direct connection between the house . . . and [the] illegal activity" [*Id.* at 5 (quoting 800 F. App'x at 327)]. Furthermore, the *Sosa-Baladon* court provided that while a direct connection "would certainly enhance the probative value of such evidence, it is not necessary" [*Id.* (quoting 800 F. App'x at 327)].

At the final pretrial conference [Doc. 255], defendants argued that the vast majority of the prescriptions in this case are unchallenged, and therefore, whatever the government seeks to introduce needs to be connected to the $2.9 million of reimbursements. In response, the government contended that evidence that a pharmacy is making more than a legitimate pharmacy should be expected to make is relevant for the same reasons outlined in its response [*See* Doc. 246]. In reply, defendants asserted that they had not received disclosure of any type of argument related to the benchmark of what a pharmacy typically profits.

After questioning, the government stated that it was not seeking to introduce this "pharmacy-profit-benchmark" evidence. Rather, the government intends to introduce

8

evidence that in 2018, RHP was struggling, and within just a few years, the pharmacy was making more money than one could expect a pharmacy to make. When asked by the Court if such argument opened the door for defendants to discuss legitimate prescriptions, the government replied it did not.

In response to the government's line of argument, defendants asserted that lifestyle choices should not be discussed unless the government could tie such choices to the alleged fraudulent activity. Furthermore, defendants argued that RHP opened in 2018 and then became successful, which is not against the law and does not suggest criminal activity.

## II. Analysis and Ruling

The Court has broad discretion "in determinations based on considerations of relevance and prejudice." *Jackson-Randolph*, 282 F.3d at 376 (citing *United States v. Hawkins*, 969 F.2d 169, 174 (6th Cir. 1992); and then citing *United States v. Stull*, 743 F.2d 439, 445 (6th Cir. 1984)). Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without that evidence. Fed. R. Evid. 401(a)–(b). Courts "employ an 'extremely liberal' relevancy standard." *Sosa-Baladron*, 800 F. App'x at 325 (quoting *United States v. Ramer*, 883 F.3d 659, 681 (6th Cir. 2018)). Rule 403, however, instructs courts to exclude relevant evidence if the probative value of such evidence "is substantially outweighed by the danger of unfair prejudice." *Huddleston v. United States*, 485 U.S. 681, 687 (1988); *accord* Fed. R. Evid. 403. Notably, the balancing test of Rule 403 "is strongly weighted toward admission." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018).

Turning specifically to the question of "lifestyle evidence," the Court begins by noting that the Supreme Court has stated, and the Sixth Circuit has recognized, that "appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to

9

prevent them." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940); *accord Jackson-Randolph*, 282 F.3d at 376; *Chalhoub*, 946 F.3d at 908. Furthermore, "it is illogical and improper to equate financial success and affluence with greed and corruption" as most wealth and affluence "are gained through honest and socially desirable or socially neutral means." *Jackson-Randolph*, 282 F.3d at 377 (citation omitted). But, the Sixth Circuit recognized, "there is a distinction between evidence that impermissibly appeals to class prejudice and wealth-related evidence that passes muster under Rule 403." *Chalhoub*, 946 F.3d at 908 (citation omitted). To that end, the Sixth Circuit established a three-part test that, if satisfied, establishes that any unfair prejudice from wealth-related evidence does not outweigh its probative value: "(1) there is other credible evidence, direct or circumstantial, of the illegal activity; (2) the money spent was not available to the defendant from a legitimate source; and (3) the accumulation of great wealth or extravagant spending relates to the period of the alleged illegal activity." *Jackson-Randolph*, 282 F.3d at 378.

To start, the Court finds that, generally, the "lifestyle" evidence the government seeks to introduce satisfies the "extremely liberal" standard of relevance. *See Sosa-Baladron*, 800 F. App'x at 325 (citations omitted). As noted by the Sixth Circuit, a direct connection between "lifestyle" evidence and a defendant's illegal activity "would certainly enhance the probative value of such evidence, [but] it is not necessary." *Id.* at 327 (quoting *Jackson-Randolph*, 282 F.3d at 379). Rather, "[w]hat is important is a 'natural connection' from which the jury may reasonably infer that the funds derived from the illegal activity financed the subject of the wealth evidence." *Id.* (citation omitted). Here, acknowledging that the Court is presently relying on a limited factual record, the Court finds that a jury could reasonably infer a natural connection between the general "lifestyle" evidence the government seeks to introduce

10

regarding defendants and the proceeds of defendants' alleged offenses. *See Chalhoub*, 946 F.3d at 907, 909 (noting that the district court admitted evidence of a lavish lifestyle, finding in part that such evidence showed the jury a motive to commit the alleged crimes). In so finding, the Court reiterates again that "[r]elevance of evidence is a low bar." *United States v. Burrell*, 114 F.4th 537, 556 (6th Cir. 2024) (internal quotation marks omitted) (quoting *United States v. Wilder*, 87 F.4th 816, 819 (6th Cir. 2023)).

Turning to Rule 403, the main point of contention between the parties here appears to be the second prong of the *Jackson-Randolph* test: "the money spent was not available to the defendant from a legitimate source[.]" 282 F.3d at 378. The Court notes the difficulty in assessing the second prong of *Jackson-Randolph* test as the parties' arguments are largely circular in nature. Defendants submit that the wealth to make particular lifestyle choices and purchases can be attributed to the other business revenue of RHP that does not fall within the scope of the government's proposed trial exhibits. And the government, in turn, argues that its selection of exhibits is only a portion of defendants' fraudulent conduct at RHP. Furthermore, at this juncture, the Court is operating in a factual vacuum in which the record has not been developed as to the monetary aspects of this case, *e.g.*, the extent of legitimate business RHP was performing and the amount of revenue attributable. *Cf. Jackson-Randolph*, 282 F.3d at 378 (finding that the government had adequately demonstrated that the money at issue was not available from another source because the government estimated, using the defendant's credit card statements and checking account activity, that the defendant's expenditures amounted to approximately $3.9 million, but tax returns and testimony from the defendant's accountant revealed legitimate income of only $2.5 million).

Nonetheless, the Court recognizes the following. First, the Court acknowledges that the case law generally indicates a pattern of admitting, or affirming the admittance of, lifestyle evidence given its probative value in similar cases. *See Jackson-Randolph*, 282 F.3d at 376–80; *Chalhoub*, 946 F.3d at 907–09; *Sosa-Baladron*, 800 F. App'x at 326–27. Second, and on the other side of this coin, the Court finds that the admittance of such lifestyle evidence by the government increases the relevance and probative value of defendants' evidence as to valid prescriptions.

Therefore, in recognition of the parties' arguments, the case law, and the rules of evidence, particularly Rules 401 and 403, the Court will impose the following parameters. First, the government is **PERMITTED** to put on proof of RHP's profitability and the defendants' lifestyles, subject to the limiting instruction discussed *infra*. The government, however, is **PROHIBITED** from using inflammatory phrases such as "lavish lifestyle" or "extravagant lifestyle" at trial. As this case approaches trial, the Court continues to be guided by the Sixth Circuit's decisions in *Jackson-Randolph* and *Chalhoub*. In particular, the Court would note that the Sixth Circuit in *Chalhoub* expressed a preference towards the use of generic categories as compared with the direct presentation of luxury expenditures when introducing lifestyle evidence. 946 F.3d at 909.

Second, defendants are **PERMITTED** to rebut the government's evidence as to RHP's profitability and their lifestyles and may do so with evidence of prescriptions outside those identified by the government as its proposed trial exhibits. In other words, defendants are not limited to the alleged fraudulent dealings of which the government intends to introduce proof. The Court further notes that, at this juncture, it will not place a limit on the scope or extent of defendants' rebuttal, leaving such determination for trial.

On balance, the Court finds that these parameters allow the admission of probative evidence while curbing any unfair prejudice defendants may suffer from the introduction of such evidence. In so finding, the Court also notes that "[a] ruling on a motion in limine is no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citation omitted); *accord Householder*, 645 F. Supp. 3d at 849. Thus, the "[d]enial [or granting] of a motion in limine does not necessarily mean that all evidence contemplated by the motion [will or] will not be admitted at trial." *Householder*, 645 F. Supp. 3d at 849 (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). The Court can alter its ruling at any point before or during the trial. *Id.* (citing *Yannott*, 42 F.3d at 1007; and then citing *Luce v. United States*, 469 U.S. 38, 41–42 (1984)).

In addition to the above set parameters, the Court also finds a limiting instruction to be appropriate for this evidentiary issue as aspects of defendants' lifestyle will be admitted for a limited purpose. Accordingly, the Court proposes the following limiting instruction:

> You have heard evidence regarding defendants' lifestyles. You may consider evidence of defendants' lifestyles as evidence of their motive, knowledge, or intent, if any, to commit the charged offenses. You must not consider the evidence of these defendants' lifestyles for any other purpose.

If the parties have any comments as to this proposed limiting instruction, such comments must be filed no later than **Monday, February 2, 2026, at 2:00 p.m. Eastern Standard Time**.

### III. Conclusion

For the reasons explained herein, and subject to the development of proof at trial, the Court **ORDERS** as follows:

1. At trial, the government is **PERMITTED** to put on proof of RHP's profitability and the defendants' lifestyles but **PROHIBITED** from

13

using inflammatory phrases such as "lavish lifestyle" or "extravagant lifestyle."

2. At trial, defendants are **PERMITTED** to rebut the government's evidence as to RHP's profitability and their lifestyles and may do so with evidence of prescriptions outside those identified by the government as its proposed trial exhibits.

3. Any comments as to the Court's proposed limiting instruction must be filed no later than **Monday, February 2, 2026, at 2:00 p.m. Eastern Standard Time**.

4. The government's first motion *in limine* [Doc. 241, pp. 1, 3-4], defendant Roper's fourteenth motion *in limine* [Doc. 242, p. 4], and defendant Haney's motion *in limine* [Doc. 244] are **DENIED**.[2]

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>UNITED STATES DISTRICT JUDGE

---

[2] The Court acknowledges argument made in the parties' written briefing and at the final pretrial conference as to the admission of valid prescriptions for purposes other than those described in the Court's above ruling. The Court reserves ruling on the admission of such prescriptions for other purposes for trial.

At the final pretrial conference [Doc. 255], the Court also took under advisement the government's seventh motion *in limine* [Doc. 241, pp. 1, 9–11]. In consideration of the present factual vacuum, and noting that "[g]enerally, it is better to address admissibility questions as they arise at trial[,]" *see Wolff v. Maybech Int'l Grp., Inc.*, No. CV 2:19-149-DCR, 2023 WL 3602810, at *4 (E.D. Ky. Apr. 4, 2023), the Court will **DENY** this motion [*id.*] with leave to make appropriate objections at trial.