UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:24-CR-113-TAV-JEM |
| | ) |
| TIFFANY HANEY, | ) |
| ANNE WARREN, and | ) |
| TINA ROPER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on Defendants' Motion for Reargument for an Evidentiary Hearing on Spoilation and to Compel Production of Giglio and Jencks Material [Doc. 306], which the Court construes as a motion to reconsider the prior denial [Doc. 269] of Defendants' Motion to Dismiss the Third Superseding Indictment and, in the alternative, for an Evidentiary Hearing and Sanctions for Discovery Violations and Potential Spoliation [Doc. 260].

"The Federal Rules of Criminal Procedure do not explicitly authorize motions for reconsideration, but defendants may file them in criminal cases." *United States v. Delgado*, 685 F. Supp. 3d 500, 501 (E.D. Mich. 2023); *see also United States v. Mack*, 831 F. App'x 787 (mem.) (6th Cir. 2020) ("Although the Federal Rules of Criminal Procedure do not authorize motions for reconsideration, the Supreme Court determined many years ago that defendants may file them" (citing *United States v. Healy*, 376 U.S. 75, 78 (1964)). "'Motions for reconsideration in criminal cases are generally treated like

motions for reconsideration in civil cases.'" *United States v. Jackson*, No. 1:16-cr-20347, 2023 WL 36067, at *1 (E.D. Mich. Jan. 4, 2023) (quoting *United States v. Estrada*, No. 14-CR-20425, 2022 WL 17682630, at *1 (E.D. Mich. Dec. 14, 2022)). "Justifying reconsideration requires a moving party to: (1) demonstrate an intervening change in the controlling law; (2) establish that new evidence is available; or (3) prove that a clear error occurred or reconsideration is necessary to prevent manifest injustice." *United States v. Boia*, No. 1:24-cr-191, 2025 WL 610645, at *1 (N.D. Ohio Feb. 26, 2025); *see also United States v. Durante*, No. 11-277, 2012 WL 113557, at *1 (D.N.J. Jan. 13, 2012).

As with defendants' prior motion to dismiss, or in the alternative, for an evidentiary hearing [Doc. 260], defendants' allegations in the instant motion amount to no more than unsupported speculation that text messages must exist, despite the government's assertion that such text messages do not exist [*See* Doc. 306]. The Court has already determined that such "speculation that additional evidence exists . . . does not warrant an evidentiary hearing" [Doc. 269, p. 10]. Although the instant motion provides more detail of various dates and times where defendants believe text messages are "missing" from the text message log of Federal Bureau of Investigation ("FBI") Agent Emily Celeste's phone, it provides no more support for such allegation than the original motion.

In fact, some of defendants' suggestions seem to be clearly mistaken. For example, defendants suggest that text messages on July 31, 2024, between Agent Celeste and Michelle McKnight prove that Agent Celeste did not preserve a text message to

2

McKnight "in which she questioned why McKnight had disclosed the information at the top of her 7:24 p.m. Facebook message to Heather Radu, to which McKnight responded: 'oops.'" [Doc. 306, p. 4]. Essentially, defendants appear to assert that Agent Celeste sent McKnight an image of a Facebook conversation between McKnight and Radu, and questioned McKnight as to why she disclosed information to Radu, with McKnight responding "oops" [*See id.*]. But defendants' own exhibit of the actual text message log belies this assertion. That log shows that on July 31, 2024, at 7:28 p.m., McKnight sent Celeste a photograph, presumptively the image of the Facebook conversation between herself and Radu, and stated "Well oops, I thought this girl knew. I think I will not say anything. I looked her up, she is pediatric ER doc and friends with Tiffany and Anne" [Doc. 306-4, p. 6]. Thus, contrary to defendants' implication, the actual text message log reflects that McKnight sent the image of the conversation to Agent Celeste, with an explanatory message, rather than Agent Celeste sending that image to McKnight to question her about it. And nothing about that conversation supports defendants' speculative assertion that additional, undisclosed text messages between Agent Celeste and McKnight exist.

In another instance, defendants allege that Agent Celeste's phone is missing a series of text messages from July 31, 2024, sent to Radu's husband [Doc. 306, p. 4]. Defendants suggest that they discovered these missing text messages based on an image of the conversation on FBI Agent Bryan Cross's phone, but that the text messages accompanying that image are "missing" [*Id.*]. The attached "screenshot" photograph of

3

that conversation indicates that Agent Celeste sent a message to Radu's husband, identifying herself and stating that she was trying to get in touch with Radu about the investigation [Doc. 306-5, p. 2]. Radu's husband responded back questioning whether Agent Celeste was actually a Knoxville FBI agent, and Agent Celeste responded that he could call the Knoxville FBI's main number to verify her identity [*Id.*]. Radu's husband responded that he would check the credentials and pass along the message, and Agent Celeste responded "Thank you" [*Id.*]. Defendants, however, do not explain why such a conversation between Agent Celeste and Mr. Radu is discoverable at all. There is no indication that Mr. Radu is a government witness, and, therefore, such conversation could not be considered Jencks or *Giglio* material. *See* 18 U.S.C. § 3500(b) (also known as the Jencks Act, addressing production of "any statement . . . *of the witness*. . ." (emphasis added)); *United States v. Maury*, 695 F.3d 227, 249 (3d Cir. 2012) ("*Giglio* material . . . is a subset of *Brady* material insofar as it addresses situations in which certain evidence about a *witness's* credibility or motivation to testify exists . . ." (emphasis added)). Moreover, there is no indication from defendants as to how this conversation between Agent Celeste and Mr. Radu is favorable to them. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment . . ."). Thus, defendants have not even established the basic premise that they were entitled to text messages between Agent Celeste and Mr. Radu.

The Court finds it unnecessary to address each specific instance of allegedly

4

"missing" text messages referenced throughout defendants' motion, which is often rambling. Suffice it to say, the Court has fully reviewed the motion and the attached exhibits, and finds that defendants have provided no more than speculation that additional *Brady*, Jencks, and/or *Giglio* material exists.

Accordingly, upon review of the defendants' motion, the Court finds that defendants have not persuaded the Court that any of the circumstances warranting reconsideration exist. Defendants' Motion for Reargument for an Evidentiary Hearing on Spoilation and to Compel Production of Giglio and Jencks Material [Doc. 306] is therefore **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE