UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |  |  |
|---|---|---|---|
|  | ) |  |  |
| Plaintiff, | ) |  |  |
|  | ) |  |  |
| v. | ) | No.: | 3:24-CR-113-TAV-JEM |
|  | ) |  |  |
| TIFFANY HANEY, | ) |  |  |
| ANNE WARREN, and | ) |  |  |
| TINA ROPER, | ) |  |  |
|  | ) |  |  |
| Defendants. | ) |  |  |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on several oral motions of defendants, raised during trial, which the Court took under advisement, as well as defendants' written trial brief [Doc. 364] addressing some of these issues, and the government's response thereto [Doc. 370].

### A.  Medical Necessity

During redirect examination of witness Allison Lawson, a pharmacist who previously worked at Rocky Hill Pharmacy ("RHP"), the government asked Lawson if the medications defendant Tina Roper was selecting on prescriptions were not "medically necessary." Defendant Tiffany Haney's counsel objected, questioning how Lawson could know if medications were medically necessary. Defense counsel also pointed to Lawson's testimony that Luther Little stated that the doctors had approved secondary creams because they were medically necessary.

The Court overruled the objection but asked the government to move on to the next question. Addressing a text message conversation between Lawson and defendants, the government asked if Lawson was laughing about disposing of medications that defendant

Roper was selecting on the prescriptions. Lawson replied in the affirmative. The government then asked another question, suggesting that these thrown-away medications were not medically necessary. Defendant Anne Warren's then interjected, questioning how Lawson could opine as to medical necessity. The Court sustained the objection and instructed the jury to disregard the government's question about whether a prescription was consistent with the practice of medicine and Lawson's answer to that question.

Subsequently, defendant Haney's counsel asserted that this line of inquiry constitutes a variance from the charges in the Third Superseding Indictment. Additionally, defense counsel contended that mentioning medical necessity was prejudicial because there is no healthcare fraud charged in this case. Defense counsel requested an instruction to the jury that medical necessity is not a question in this case. The Court directed defense counsel to set forth this request in writing with legal authority the following day, with the government to respond in writing the subsequent day.

In their brief, defendants first contend that the government abandoned its "medical necessity" theory when it superseded the healthcare fraud charges in the Second Superseding Indictment [Doc. 364, p. 1]. Accordingly, any references to medical necessity would be "irrelevant, confusing, [and] unduly prejudicial" [*Id.* at 1–2]. Second, defendants argue that whether a medication is "medically necessary" requires "specialized evaluations including medical diagnoses, the applicable standard of care, treatment alternatives, dosage appropriateness, and a risk-benefit analysis," and thus, "require[s] a level of interaction with a patient" that Lawson does not possess [*Id.* at 2]. Finally, defendants assert that Lawson was not designated as an expert witness, and therefore, any opinion as to medical necessity would

2

be unqualified and impermissible [*Id.*]. Defendants request that the jury be instructed that they cannot consider medical necessity or lack thereof as evidence of defendants' guilt [*Id.*].

The government responds that "medical necessity" is relevant to knowledge, intent, and materiality under the Sixth Circuit's wire fraud instructions, specifically, the element of "intent to defraud" which means that the defendant acted "knowingly and with the intent to deceive or cheat" [Doc. 370, pp. 1–2 (citing Sixth Circuit Pattern Criminal Jury Instructions § 10.02(2)(A)–(E))]. The government argues that "medical necessity" is not a stray healthcare fraud theory, but rather, is a part of the material misrepresentation defendants made in order to be reimbursed [*Id.* at 2]. The government submits that the issue here is "whether defendants knowingly submitted or caused to be submitted via interstate wire claims for reimbursement that contained false or materially misleading representations" [*Id.* at 2–3]. And defendants did just that when they sought reimbursement for fraudulently "added on" medications [*Id.* at 3]. The government asserts that defendants passed these altered prescriptions on as "medically necessary" to payors "because defendants knew that the payors would only reimburse defendants for drugs that were medically necessary—as determined by the prescribing physician, not the pharmacist defendants" [*Id.*]. Accordingly, the government avers, the invalid medications defendants "added on" to valid, medically necessary prescriptions are relevant to (1) "[w]hether defendants knew the 'add ons' were improper;" (2) "[w]hether the representations to payors was material; and" (3) "[w]hether defendants acted with intent to deceive" [*Id.* at 4].

The government further maintains that Lawson can testify that what RHP "dispenses must match what the prescriber prescribed because 'that is what the doctor has deemed

3

medically necessary for that patient'" [*Id.* at 3]. This testimony, the government argues, comports with Rule 701 because it was based on Lawson's particularized knowledge of RHP's "prescription reimbursement processes" and policies she obtained through her employment with RHP [*Id.*].

The Court begins with defendants' broad assertion that since healthcare fraud is no longer charged, medical necessity is off the table. This assertion is contrary to the case law. In fact, the Sixth Circuit "has repeatedly affirmed convictions under § 1347[, health care fraud,] *(and related conspiracy convictions)* based on the submission of claims for reimbursement for services that the defendants knew were not medically necessary." *United States v. Weir*, No. 2:21-CR-8, 2025 WL 1235776, at *11 (M.D. Tenn. Apr. 29, 2025) (emphasis added) (collecting cases); *accord United States v. Bailey*, 973 F.3d 548, 567 (6th Cir. 2020) (finding there to be ample evidence to support the defendant's conviction for wire fraud in part because a witness testified that he and the defendant "participated in a scheme to defraud Medicare by selling power wheelchairs to individuals for whom the device was not necessary"); *United States v. Harper*, 945 F.2d 405, 1991 WL 188165, at *1 (6th Cir. 1991) (table) (noting that the defendants were indicted on, and pled guilty to, 1 count of conspiracy to distribute controlled substances and 31 counts of mail fraud for "overbilling Blue Cross/Blue Shield for podiatric services that were either not medically necessary or that were never performed"); *United States v. United Mem'l Hosp.*, No. 1:01CR238, 2002 WL 33001119, at *3 (W.D. Mich. July 23, 2002) (noting that the charges for conspiracy to commit mail and/or wire fraud, mail fraud, and wire fraud "detail the elements of each of the offenses and particularly describe the object of the conspiracy (*i.e*, to profit from billings for unnecessary

medical services")). Therefore, the charge of wire fraud, as opposed to the charge of healthcare fraud, does not dictate if medical necessity is a factual underpinning of a case.

Accordingly, the Court turns to the narrower question arising from the parties' oral arguments and that which they have set forth in writing is—does the introduction of medical necessity evidence result in a variance[1] of the indictment?

### 1. Variance

"A variance 'occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *Mize*, 814 F.3d at 409 (quoting *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008)). A variance is not "*per se* prejudicial." *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). "A defendant's substantial rights are affected 'only when the defendant shows prejudice to h[er] ability to defend h[er]self at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.'" *Mize*, 814 F.3d at 409 (quoting *Kuehne*, 547 F.3d at 683).[2]

As stated previously, defendants contend that reference to "medical necessity" constitutes a variance because the government abandoned its "medical necessity" theory when

---

[1] The Court notes that, in addition to variances, constructive amendments are also a type of indictment modification recognized by the Sixth Circuit. *See United States v. Mize*, 814 F.3d 401, 409 (6th Cir. 2016) (citing *United States v. Hynes*, 467 F.3d 951, 961 (6th Cir. 2006)). However, the Court will limit its analysis to variances, as this is the scope of defendants' argument, and this trial has not yet reached closing jury instructions. *See id.* ("[A] constructive amendment requires a showing 'that the important functions of an indictment were undermined by both the evidence presented *and* the jury instructions.'" (emphasis in original) (quoting *Hynes*, 467 F.3d at 962)).

[2] While acknowledging defendants' request here, the Court also notes that variance claims appear to typically arise on appeal as the remedy for a prejudicial variance is reversal of conviction. *See Kuehne*, 547 F.3d at 683. And there is no conviction at this juncture.

5

it superseded the healthcare fraud charges in the Second Superseding Indictment [Doc. 364, p. 1]. Specifically, in the Second Superseding Indictment, the government alleged, as part of the manner and means of the conspiracy to commit healthcare fraud, that defendants "submitted additional claims for medications that were not medically necessary and/or were not dispensed pursuant to a valid prescription, and therefore, not eligible for reimbursement" [Doc. 127 ¶ 32]. The Third Superseding Indictment, however, does not include a charge of conspiracy to commit healthcare fraud, but rather, charges conspiracy to commit wire fraud [Doc. 217, p. 3]. And, in the allegations regarding the manner and means of the conspiracy to commit wire fraud, the Third Superseding Indictment does not include the language regarding "medically necessary," but rather, alleges that defendants "submitted . . . additional claims for medications that were not dispensed pursuant to a valid prescription, and therefore not eligible for reimbursement" [*See id*. ¶ 28].

Notably, "[t]he presentation of additional evidence to substantiate charged offenses . . . does not constitute facts materially different from those charged in the indictment." *Kuehne*, 547 F.3d at 686. The Court finds here that whether a medication was medically necessary is additional evidence to substantiate the charge of conspiracy to commit wire fraud, and the substantive counts of wire fraud, rather than "facts materially different" from those charged in the Third Superseding Indictment. *See id.* Specifically, it appears undisputed that a medical doctor or nurse practitioner who interacts with and evaluates a patient could determine that a medication is medically necessary, or appropriate, for that patient. And in finding a medication medically necessary, a medical doctor or nurse practitioner could prescribe such medication. Pharmacists, however, do not have a level of

6

individualized interaction with patients to determine if, for a particular patient, a medication should be written because the medication is medically necessary. Accordingly, if a pharmacist is adding a medication to a prescription written by a medical doctor or nurse practitioner, and such addition was not authorized by the prescriber, it follows that the additional medication was not deemed medically necessary for a patient by their treating medical doctor or nurse practitioner. In other words, the Court finds that whether a medication was dispensed via a valid prescription is largely linked to, and not materially different from, whether a medication was medically necessary. *See Kuehne*, 547 F.3d at 686. Therefore, the Court does not find evidence regarding "medical necessity" to constitute a variance from the Third Superseding Indictment.

Even if the Court were to find a variance, defendants have not shown how their substantial rights have been affected at this point. Again, "[a] defendant's substantial rights are affected 'only when the defendant shows prejudice to h[er] ability to defend h[er]self at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.'" *Mize*, 814 F.3d at 409 (citation omitted).

Here, defendants' ability to defend themselves at trial has not been prejudiced by the references to medical necessity thus far. Foremost, and to date, there have been scant references to medical necessity in the government's case-in-chief.[3] Moreover, the references to medical necessity so far have not been limited to the government—defendant Haney's

---

[3] And as discussed *infra*, the Court reiterates its sustainment of defense counsel's objections to the government's question, and Lawson's answer, as to medical necessity during redirect examination. Additionally, as set forth *infra*, the Court is limiting who may testify as to medical necessity going forward.

7

referenced medical necessity in his cross-examination of Lawson. Additionally, the Court notes medical necessity has been a frequent topic of discussion in this case, even after the Third Superseding Indictment was filed [*See* Sealed Doc. 151, pp. 40, 62–63; Doc. 203, p. 5; Doc. 210, pp. 6–7; Doc. 242, p. 4; Doc. 247, p. 7; Doc. 252, p. 10]. Thus, despite the Third Superseding Indictment's lack of specific medical necessity language, defendants had some notice that medical necessity could arise at this trial. And to that point, defendants have an expert witness in their arsenal who aims to testify as to why compound formulations "are medically appropriate for the pain conditions treated by the respective prescribers in this case" [Doc. 210, p. 6]. Therefore, and in conjunction with the Court's ruling *infra*, the Court finds that the playing field is essentially "level with respect to [the] evidence" of medical necessity. *See United States v. Robinson*, 99 F.4th 344, 366 (6th Cir. 2024). Finally, regarding prejudice as to the indictment's sufficiency to bar subsequent prosecutions, defendants have not made such showing. *Mize*, 814 F. 3d at 409 (citation omitted).

### 2. Testimony as to Medical Necessity

In finding that evidence of medical necessity does not constitute a variance from the Third Superseding Indictment, the Court turns to the final issue of *who* can testify as to medical necessity, as raised in part by defendants.

As set out by Federal Rule of Evidence 701(c), a lay witness may not offer opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." And "[a]lthough a doctor may properly be called as a lay witness to testify about facts and treatment," as has occurred in this case, "she may *not* testify about the connection between the two without being qualified as an expert—in other words, she may not explain why treatment

8

Case 3:24-cr-00113-TAV-JEM   Document 394   Filed 02/27/26   Page 8 of 19
PageID #: 4550

was medically necessary or appropriate." *United States v. Lang*, 717 F. App'x 523, 537 (6th Cir. 2017) (emphasis in original) (first citing *United States v. Volkman*, 797 F.3d 377, 388–90 (6th Cir. 2015); and then citing *United States v. Kirk*, 584 F.2d 773, 785 (6th Cir. 1978)). Put another way, "[t]o opine on *why* a physician wrote a specific prescription and *why* the patient needed it takes specialized medical knowledge, and is therefore a medical judgment subject to Rule 702." *Id.* (emphasis in original) (citing *Volkman*, 797 F.3d at 388–90); *accord United States v. Khalil*, No. 22-CR-20200, 2024 WL 4988983, at *2 (E.D. Mich. Dec. 5, 2024) (permitting the government's physician witness, as a lay witness, to testify as to whether they ordered particular tests and whether the test performed was the test ordered but prohibiting testimony as to whether "certain aspects of treatment were medically necessary" as such is "classic expert testimony").

Following the authority of the Sixth Circuit, the Court concludes that testimony as to medical necessity is to be left to the expert witnesses in this trial. In so concluding, the Court reiterates its **SUSTAINMENT** of defendants' objection to Lawson's testimony as to medical necessity. Given this reiteration, and the above finding that medical necessity is not a variance from the indictment, the Court will **DENY** defendants' jury instruction request [Doc. 364, p. 2].

### B. Subsequent Remedial Measures

Additionally, during Lawson's direct examination, the government elicited testimony regarding a "new policy" implemented two days after the search warrant was executed at RHP, requiring pharmacy employees to inform doctors of prescription changes, which the pharmacy had not been doing previously. Defendant Haney's counsel then requested an instruction on

9

subsequent remedial action. Ultimately, the Court ordered defense counsel to file any appropriate brief or further motion in support of the oral request, to include the basis and legal authority for the request.

In their supplemental trial brief, defendants argue that, in light of Lawson's testimony about a "new" policy implemented after the search warrant was executed, the Court should instruct the jury as follows prior to the resumption of Lawson's testimony:

> During Alison [sic] Lawson's testimony, you heard testimony that a "new" policy was implemented following the execution of a search warrant at Rocky Hill Pharmacy. I hereby instruct you that you cannot consider any change of policy as evidence that Defendants are guilty of the offenses charged in this case.

[Doc. 364, pp. 2–3]. In support, defendants cite Federal Rules of Evidence 407, 401, and 403 [*Id*. at 3].

The government responds that Rule 407 is rooted in tort policy, and this is a criminal fraud prosecution, not a negligence action [Doc. 370, p. 5]. The government contends that Rule 407, by its terms, does not bar such evidence if used for another purpose such as ownership, control, or feasibility, which is how the government offers the evidence here [*Id*.]. Specifically, the government states that the evidence is probative of (a) knowledge that prior practices were deficient; (b) feasibility of compliance procedures; and (c) consciousness of wrongdoing [*Id*.]. Further, the government argues that Rule 407 does not cover defendant's post-search "policy change," as Lawson testified that the "new policy" was to make doctors aware of changes RHP made to prescriptions, but prior notification and approval from doctors is a step defendants were already legally obligated to take [*Id*. at 6 (citing *United States v. Holmes*, 129 F.4th 636, 657 (9th Cir. 2025))].

10

Under Rule 407, evidence of subsequent remedial measures that would have "made the injury or harm less likely to occur . . . is not admissible to prove negligence [or] culpable conduct." *Nolan v. Memphis City Sch.*, 589 F.3d 257, 273–74 (6th Cir. 2009) (quoting Fed. R. Evid. 407). However, "the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. Rule 407 is "grounded upon 'a policy of encouraging people to take, or at least not discourage them from taking, steps in furtherance of added safety.'" *Pfeifer v. Hiland*, No. 5:15-CV-7, 2019 WL 1767567, at *6 (W.D. Ky. Apr. 22, 2019) (quoting Advisory Committee Note to Rule 407). Moreover, "Rule 407 is meant to avoid 'punish[ing] the defendant for his efforts to remedy his safety problems,' so the rule does not contemplate exclusion of evidence that the defendant took actions that it was legally obligated to take." *Holmes*, 129 F.4th at 657 (quoting *In re Aircrash in Bali, Indon.*, 871 F.2d 812, 817 (9th Cir. 1989)).

Some courts have held that Rule 407 may be applicable in criminal prosecutions. *See United States v. DSD Shipping, A.S.*, No. 15-102-CG-B, 2015 WL 5722805, at *2 (S.D. Ala. Sept. 29, 2015) (stating that the possibility of subsequent remedial measures does not arise under most criminal contexts, but where "subsequent remedial measures are possible in a criminal case, Rule 407 does not state that the case is excluded from its application"); *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 951 (N.D. Cal. 2016) ("Rule 407's bar of subsequent remedial measures can apply to criminal cases"). Other courts have concluded that the policy purpose behind Rule 407 indicates it is not applicable to criminal actions. *See United States v. Parker*, 634 F. Supp. 3d 583, 588 (W.D. Ark. 2022) ("While it is true that the

11

Federal Rules of Evidence apply to both civil and criminal cases, Rule 407 is designed for civil actions."); *United States v. Gallagher*, No. 89-272-03, 1990 WL 52722, at *2 (E.D. Pa. Apr. 24, 1990) ("The court finds no legal authority or policy reasons supporting application of Rule 407 in a criminal action, and concludes that it is inapplicable"). Although the Sixth Circuit had not directly addressed this issue, the Court concludes that the underlying social policy—encouraging remedial measures in furtherance of safety—demonstrates that Rule 407 is more tailored to tort law. *See generally Pfeifer*, 2019 WL 1767567, at *6 (quoting Advisory Committee Note to Rule 407).

But even if Rule 407 applies to this criminal prosecution, the Court finds that evidence of the "new policy" requiring RHP employees to confirm changes to prescriptions with doctors is admissible because Rule 407 does not bar evidence that a defendant took actions he or she was legally obligated to take. *See Holmes*, 129 F.4th at 657; *see also Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 189 (M.D. Tenn. 2014) (citing *In re Aircrash in Bali, Indon.*, 871 F.2d at 817) (stating that Rule "407 does not apply to involuntary remedial measures.")); *Pac. Gas & Elec.*, 178 F. Supp. 3d at 952 ("An exception to Rule 407 is recognized for evidence of remedial action mandated by superior governmental authority . . . because the policy goal of encouraging remediation would not necessarily be furthered by exclusion of such evidence" (quoting *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990))); *United States v. Balwani*, No. 5:18-cr-258, 2022 WL 597040, at *6 (N.D. Cal. Feb. 28, 2022) (concluding that actions taken because they were believed to be necessary to comply with federal regulations were "involuntary" and therefore not remedial measures under Rule 407). Here, numerous witnesses have testified that only doctors and "mid-levels" have authority to write

prescriptions, and pharmacist and pharmacy technicians do not have authority to write or modify prescriptions. As a result, the Court does not find that the alleged "new policy" of requiring pharmacy employees to inform prescribers of alterations to prescriptions to be a "voluntary" remedial action within the confines of Rule 407. Accordingly, defendants' request for a jury instruction related to subsequent remedial measures is **DENIED**.

### C. Witness Jessica Cantwell

Upon beginning the cross-examination of witness Jessica Cantwell, defendant Haney's counsel moved for a continuance on the ground that Cantwell is represented by attorney Adam Rust who is "irreconcilably conflicted" because he represents another anticipated witness, Michelle McKnight, for purposes of a potential future civil proceeding involving some of the same facts as this case. Defense counsel asserted that the current proceedings "have been irreconcilably tainted" because the government called Cantwell to the stand and "fused these proceedings with the product of a conflict." Defense counsel contended that Cantwell committed perjury during her direct examination and stated that she needed to be advised by an unconflicted attorney, not attorney Rust, about whether she would waive her Fifth Amendment rights against compelled self-incrimination.

The government responded that there was no evidence of an actionable conflict of interest that would prevent Cantwell's attorney from advising her on whether she should exercise her Fifth Amendment rights. The government also contended that any ethical conflict had no bearing on this case as the witness is not a party to the case, and there is no right of a witness to have representation in a criminal proceeding, let alone conflict-free representation. The government further stated that there was no danger of these criminal proceedings being

13

tainted by any issue with a witness's attorney/client relationship.

Defendant Haney's counsel replied that his request was not related to the purported conflict of interest but was related to the alleged perjury of the witness. Defendant Warren's counsel responded to the Court's request for a rule or statute in support of the request, citing Rule 8 of the Tennessee Supreme Court and Rule 1.7 of the Tennessee Rules of Professional Conflict, relating to attorney conflicts of interest.

The government responded that, even if there was inaccurate testimony, there is an ocean between that and perjury, and, at this point, there is no basis for the allegation that Cantwell perjured herself. The government argued that the rules about a lawyer's ethical responsibilities are not relevant to whether a continuance is appropriate based on a witness's attorney/client representation.

The Court concluded that defendants had cited no authority persuading the Court that a continuance of the entire trial was necessary but found it appropriate to direct that examination of Cantwell be paused, as well as the testimony of any other witness that may raise similar issues, to allow the parties to brief this issue. The Court directed defendants to file a brief addressing this issue, which should state the issues, the specific requested relief, and the specific legal authority for the issues posed and the relief requested.

In their trial brief, defendants state that they have "discharged their ethical responsibilities by bringing to the Court's attention" their viewpoint that Cantwell provided "inaccurate testimony" during her direct examination and "may be represented by a conflicted attorney" [Doc. 364, p. 3]. Defendants ask the Court to instruct Cantwell as follows prior to the resumption of her testimony:

> Attorneys for the Defendants in this case have expressed their view that your sworn testimony is perjurious. Perjury is a serious crime and could subject you to serious penalties, including incarceration. If you wish to consult an attorney regarding the Defendants' position prior to resuming your testimony on this matter, the Court will appoint one for you.

[*Id.*]. Defendants cite Rules 1.7 and 1.8 of the Tennessee Rules of Professional Conduct in support of this request [*Id.*]. No other citation to legal authority is given for the requested instruction [*Id.*].

In written response, the government contends that the requested instruction is not an evidentiary instruction, but rather, "is a credibility attack disguised as judicial guidance that improperly influences and invades the province of the jury" [Doc. 370, p. 6]. The government notes that, contrary to the Court's order, defendants cited no legal authority for their requested witness instruction, and therefore, it should be summarily denied [*Id.* at 7]. Moreover, the government notes that the Sixth Circuit has warned that judicial comments such as the proposed instruction suggest disbelief of a witness and risk impermissible influence [*Id.* (citing *United States v. Hickman*, 592 F.2d 931, 936 (6th Cir. 1979))]. Further, the government asserts that the proposed instruction to Cantwell would "risk placing the Court's imprimatur on defense counsel's witness intimidation scheme that the government previously brought [to] the Court's attention" [*Id.* (citing Sealed Doc. 320)].

Although defendants have been somewhat inconsistent as to the nature of their request, based on defendant's written submission [Doc. 364], the Court construes the request, at this stage, as limited to a request to instruct the witness about defendants' contention that she has

15

committed perjury and advise her of her right to consult with counsel about that allegation.[4]

First, the Court finds that defendants have not provided adequate legal support for their requested instruction to Cantwell. Due to the ongoing issue in this case of requests for relief without any citation to legal support for that relief, the Court directly ordered that this issue be addressed, in writing, setting forth the relief sought and the legal authority for that relief. Despite that direct instruction, defendants cited no legal authority for their argument for an instruction on perjury to Cantwell, beyond citation to two Tennessee Rules of Professional Conduct. But those rules do not address the issue of the instruction whatsoever. Instead, they appear to go towards the allegation that attorney Rust has a conflict of interest. Notably, defendants do not present the Court with any requested relief as to that alleged conflict of interest, nor does the Court find that any such alleged conflict would be relevant to this criminal case. Accordingly, based on the lack of legal support alone, the Court finds that defendants' request for a perjury instruction to Cantwell is unwarranted. *See* Fed. R. Crim. P. 47(b) (stating that "[a] motion must state the *grounds on which it is based* and the relief or order sought" (emphasis added)); E.D. Tenn. L.R. 7.1(b) (directing that briefing on a motion "shall include a concise statement of the factual and *legal grounds which justify the ruling sought* from the Court" (emphasis added)).

Nonetheless, the Court finds the requested instruction to Cantwell otherwise inappropriate. Notably, the Supreme Court has held that "a witness subpoenaed to testify

---

[4] The Court also notes that, to the extent that Cantwell wishes to consult with legal counsel, attorney Rust has been present in the courtroom throughout her testimony thus far, as well as throughout the parties' oral arguments relating thereto, and she remains free to consult him regarding her Fifth Amendment rights.

16

before a petit jury and placed under oath has never been entitled to a warning that, if [s]he violates the solemn oath to 'tell the truth,' [s]he may be subject to a prosecution for perjury, for the oath itself is the warning." *United States v. Mandujano*, 425 U.S. 564, 582 (1976). In fact, "[i]t would render the sanctity of the oath quite meaningless to require admonition to adhere to it." *Id*. at 581–82 (quoting *United States v. Winter*, 348 F.2d 204, 210 (2d Cir. 1965)). Cantwell was placed under oath upon beginning her testimony, and the Court does not find that a further instruction about the consequences of violating that oath is necessary.

The Court also notes the potential for improperly influencing the witness and/or the jury by giving such an instruction. As the Sixth Circuit has noted, "potential prejudice lurks behind every intrusion into a trial made by a presiding judge. The reason for this is that a trial judge's position before a jury is overpowering. His position makes his slightest action of great weight with the jury." *Hickman*, 592 F.2d at 933 (internal citations and quotation marks omitted). And, even in circumstances where a perjury warning may be warranted, when the substance of that warning is "over and above what the record indicates is necessary, and appropriate" there is an inference that the warning was intended to coerce the witness into silence. *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995) (quoting *United States v. Jackson*, 935 F.2d 832, 847 (7th Cir. 1991)). An instruction from the Court to the witness would possibly have undue influence and perhaps lend inappropriate weight to defendants' allegations of perjury. Accordingly, the Court finds that giving the proposed instruction to Cantwell could result in undue influence by the Court in this case.

For all these reasons, defendants' request for the Court to warn Cantwell about the allegations of perjury and/or offer consultation with counsel about that allegation is **DENIED**.

17

### D. Witness Heather Radu

The Court addresses one additional matter that has arisen during witness testimony. Specifically, during cross-examination of witness Heather Radu, defendant Haney's counsel inquired about text and/or Facebook messages between Radu and anticipated witness Michelle McKnight. Radu testified that she did not have all of the messages but may have some on her cell phone. Defense counsel asked Radu whether she would be willing to review her cell phone, and whether such would refresh her recollection of the messages' content. The Court sustained objections to those questions. After defense counsel's persistent efforts to inquire along this line, the Court asked counsel to cite a rule or case indicating that such was proper questioning. Defense counsel did not cite any rule or case.

At the break, defendant Haney's counsel stated that he did not understand the Court's ruling precluding him from seeking a subpoena for the witness's phone or Facebook messages. He argued that the witness had testified that she could potentially have her recollection refreshed by her phone. Thus, defense counsel stated that he would like to subpoena the witness to bring her phone to the witness stand to refresh her recollection.

The Court found that it did not have enough of a record before it to rule on defendant's oral request, and therefore, instructed defendant Haney, or defendants collectively, to file any appropriate brief or further motion in support of the oral request by Thursday, February 19, 2026, at 8:00 a.m. Eastern Standard Time. The Court stated that, dependent on its ruling, Radu would be subject to recall.

Despite this direction, defendants filed no briefing on this issue. In light of the Court's prior determination that it did not have enough information to grant defendant Haney's request,

18

and in light of defendants' failure to file any subsequent briefing addressing this issue, the Court finds that defendants have abandoned any request to recall Radu for purposes of cross-examining her to refresh her recollection with the contents of her cell phone. *See Lewis v. Elliot*, No. 5:24-10-DCR-CJS, 2024 WL 1600666, at *2 (E.D. Ky. Feb. 28, 2024) (finding that a party's failure to fully comply with the court's order constituted an abandonment of claims). Accordingly, any request to recall Radu to the stand to refresh her recollection with her cell phone is **DENIED**.

### E. Conclusion

For the reasons stated, the Court finds as follows:

1. Defendants' motion for a jury instruction regarding "medical necessity" is **DENIED**;

2. Defendants' motion for a jury instruction regarding subsequent remedial measures is **DENIED**;

3. Defendants' motion for an instruction to witness Jessica Cantwell is **DENIED**; and

4. Defendants' request to recall witness Heather Radu is **DENIED** as abandoned.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE